27 A.3d 994

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Michael COOPER, Alias Kenny Brown, Appellee.**

Supreme Court of Pennsylvania.

Argued May 12, 2010.

Decided Sept. 29, 2011.

438

J. Charles Gerbron, Jr., Hugh J. Burns, Jr., Ronald Eisenberg, Philadelphia, Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

Karl Baker, Defender Association of Philadelphia, Philadelphia, Jill Heilman, for Michael Cooper.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

### *OPINION OF THE COURT*

Chief Justice CASTILLE.

We consider the effect of a *pro se* notice of appeal forwarded to the Superior Court by a counseled criminal defendant, where counsel, who was not made aware of the *pro se* notice, subsequently files a timely post-sentence motion which is denied by the trial court, and then a second, timely notice of appeal. In this case, the Superior Court administratively quashed the counseled appeal as duplicative, and then quashed appellee's *pro se* appeal as premature and void, yet also remanded the case to the trial court for additional review of appellee's counseled post-sentence motion. For the reasons that follow, we vacate and remand to Superior Court for consideration of the merits of appellee's appeal from the judgment of sentence.

On May 24, 2004, following a bench trial, the Honorable Rayford A. Means found appellee guilty of aggravated assault and simple assault, possession of drug paraphernalia, and possession of an instrument of crime. On July 21, 2004, Judge Means sentenced appellee to a term of imprisonment of 11½ to 23 months, to be followed by five years of probation on the aggravated assault conviction with no further penalty for the additional offenses.

On March 27, 2008, appellee appeared before Judge Means with court-appointed counsel[1] for a violation of probation ("VOP") hearing. The alleged violations included failure to comply with the rules and regulations of his probation, failure to comply with economic sanctions, noncompliance with mental health treatment requirements, failure to report to his assigned probation officer, and a 2007 arrest for possessing an instrument of crime, terroristic threats and simple assault. At the hearing, the court heard from appellee's probation officer, his counsel and an assistant district attorney. Judge Means found appellee to be in technical violation of his probation and revoked it. Judge Means then sentenced appellee to a term of imprisonment of four to eight years and informed him that he had ten days to seek modification of his sentence and 30 days to appeal.

On Monday, March 31, 2008, appellee filed a *pro se* notice of appeal to the Superior Court, docketed in that court as 1055 EDA 2008.[2] On April 2, 2008, Judge Means issued an order pursuant to Pa.R.A.P. 1925(b), requiring appellee to file a statement of matters complained of on appeal; the court served appellee with the order, but not his counsel.[3] On April

1. Since April 2000, appellee was represented in trial court proceedings by the Defender Association of Philadelphia.

2. Appellee did not serve his counsel with the notice of appeal, though he did serve the District Attorney's Office. There is no indication that the clerk of courts sent a copy of the notice of appeal to defense counsel in accordance with Pa.R.Crim.P. 576(A)(4) (in any case in which a defendant is represented by an attorney, if the defendant submits for filing a document that has not been signed by the attorney, the clerk shall accept it for filing and forward a copy to counsel).

3. In addition to the *pro se* notice of appeal filed on March 31, 2008, appellant made other *pro se* filings on April 11, 2008, including a

7, 2008, appellee's counsel, apparently unaware of the *pro se* appeal notice and the court's response to it, filed a timely post-sentence motion challenging appellee's VOP sentence. The trial court denied the motion, on the merits, on April 10, 2008. On April 18, 2008, appellee's counsel filed a timely notice of appeal from the judgment of sentence, which was docketed in the Superior Court at 1230 EDA 2008.[4]

On June 12, 2008, Judge Means issued a Rule 1925(a) opinion, in which he concluded that the VOP sentence he imposed on appellee was legal and proper.[5] However, on July 16, 2008, Judge Means purported to grant sentencing reconsideration, vacate appellee's VOP sentence, and impose a reduced new sentence of 11½ to 23 months in prison, to be followed by 6 years of probation. Insofar as the record reflects, Judge Means acted *sua sponte,* since there is no request or other filing reflected in the docket, and the July 16 order does not address the occasion for the purported reduction, or the court's authority to act in the face of the pending appeal.

The appeal currently before this Court derives from appellee's *pro se* notice of appeal docketed at 1055 EDA 2008, because on June 9, 2008 the Superior Court administratively dismissed as "duplicative" the appeal filed by counsel at 1230 EDA 2008. Appellee did not challenge that determination.

document entitled "Request Leave to File Pro Se Concise Statement of Matter Complained of on Appeal," and a set of requests for admission addressed to Judge Means, apparently in response to Judge Means's Rule 1925(b) order. These filings were not served on defense counsel either. Eventually, on April 29, 2008, Karl Baker, Esquire, of the Defender Association, did formally enter his appearance in the *pro se*-filed appeal. There is no indication that the Defender moved to withdraw the *pro se* notice of appeal, or to consolidate the two appeals.

4. Despite the filing of two notices of appeal to the Superior Court and Judge Means's April 10, 2008 order denying appellee's counseled post-sentence motion, the trial court docket reflects that a "hearing notice" was issued on June 9, 2008. It is not clear from the docket whether any hearing was held, or whether the notice pertained to the already-denied post-sentence motion.

5. Judge Means addressed only the claims raised in the Rule 1925(b) statement filed by counsel. Judge Means did not address the *pro se* filings by appellee in response to the Rule 1925(b) order.

Then, on May 27, 2009 a Superior Court panel issued a memorandum opinion quashing the appeal at 1055 EDA 2008 as premature and a "nullity." Notwithstanding the quashal, the memorandum also remanded the case to the trial court for a hearing on the merits of appellee's counseled post-sentence motion.

In implementing this combined mandate of both quashal and remand, the panel relied on *Commonwealth v. Mincavage*, 945 A.2d 233 (Pa.Super.2008), to hold that appellee's *pro se* notice of appeal was rendered premature by the subsequent timely, counseled post-sentence motion, the *pro se* appeal therefore was a nullity, and the trial court retained jurisdiction over the post-sentence motion. Moreover, the panel rejected the Commonwealth's claim that appellee had waived any sentencing complaint by failing to file a post-sentence motion before taking his *pro se* appeal, noting that the trial court had later received a timely motion from counsel. The panel noted that the "rationale applies especially" where defense counsel has no knowledge of the *pro se* filing and the trial court clerk fails to forward a time-stamped copy of the *pro se* filing to counsel as required by Pa.R.Crim.P. 576(A)(4).

The panel explained that the purpose of this procedure is to allow the trial court, in the first instance, to correct any error that may warrant arrest of judgment, a new trial or modification of sentence. The panel added that the procedure assumes particular importance where, as here, a defendant raises a discretionary sentencing claim, which cannot be raised for the first time on direct appeal. Thus, the panel both quashed the appeal and remanded to the trial court with a directive to hold a hearing to address the merits of the counseled post-sentence motion. The panel recognized that Judge Means had already denied the post-sentence motion, and written a Rule 1925(a) opinion supporting the sentence imposed. Nevertheless, the panel felt that there was nothing in the opinion to indicate that Judge Means had considered the post-sentence motion on its merits or held a hearing, since he denied it "just three days after it was filed." The panel also noted that Judge Means had erroneously stated in his

opinion that appellee had been convicted of aggravated assault on March 27, 2008, which was actually the date the VOP sentence was imposed. The panel concluded that this error was further basis for its mandate.

The Commonwealth filed a petition for allowance of appeal to this Court, which we granted, phrasing the issue before us as follows:

Are the Superior Court's holdings in *Commonwealth v. Mincavage*, 945 A.2d 233 (Pa.Super.2008), and in the present case, in direct conflict with the Rules of Criminal Procedure and Rules of Appellate Procedure, specifically Pa.R.Crim. P. 720 and 721 and Pa.R.A.P. 1701 and 3304?

This issue presents a pure question of law regarding the interplay between the Superior Court's decisions and the criminal and appellate procedural rules; therefore, our scope of review is plenary and the standard is *de novo*. *Diehl v. W.C.A.B. (I.A. Const.)*, 607 Pa. 254, 5 A.3d 230, 243 (2010) (citing *Lynnebrook & Woodbrook Assocs., L.P. v. Bor. of Millersville*, 600 Pa. 108, 963 A.2d 1261, 1263 (2008)); *Commonwealth v. Janssen Pharmaceutica, Inc.*, 607 Pa. 406, 8 A.3d 267, 271 (2010).

The Commonwealth argues that the Superior Court's decisions in *Mincavage* and this case conflict with the appellate and criminal procedural rules. According to the Commonwealth, both in *Mincavage* and here, the Superior Court held that a counseled post-sentence motion filed after a defendant files a *pro se* notice of appeal renders the notice of appeal premature. The Commonwealth invokes Pa.R.Crim.P. 720, which provides, in relevant part: "If the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of imposition of sentence ..." Pa.R.Crim.P. 720(A)(3). The Commonwealth argues that this Rule does not contemplate or provide for the consideration of a defendant's post-sentence motion filed after his own notice of appeal. The Commonwealth notes that the *Mincavage* panel relied on the Explanatory Comment to Rule 720.[6] But, the Commonwealth argues, the comment actually directs

6. Rule 720's Explanatory Comment provides:

a contrary result because its plain language specifically provides that it is the **Commonwealth's** post-sentence motion that will render a defendant's notice of appeal premature; the comment does not contemplate that the defendant can render his own notice premature. In *Mincavage*, the Commonwealth claims, the Superior Court read the word "Commonwealth" in the comment to Criminal Rule 720 as if it said the "Commonwealth or the defendant," a reading that obviously is not supported by the comment's language.

The Commonwealth further contends that the Superior Court's decision ignores the rationale behind the Explanatory Comment, which is that a party cannot forestall consideration of the opponent's post-sentence motion by filing a snap notice of appeal before the time for filing a post-sentence motion expires. The Commonwealth adds that Criminal Rule 721, governing Commonwealth challenges to a sentence,[7] includes an identical, corresponding Explanatory Comment, which notes that the Commonwealth's notice of appeal is to be deemed premature if the defendant files a timely post-sentence motion.[8] The Commonwealth claims that, when read together, Rules 720 and 721 make the governing rationale

> Given that the Commonwealth has 10 days to file a motion to modify sentence under Rule 721(B)(1), it is possible that the defendant might elect to file a notice of appeal under Rule 720(A)(3) *followed by* the Commonwealth's filing a timely motion to modify sentence. When this occurs, the defendant's notice of appeal is rendered premature, because the entry of the order disposing of the Commonwealth's motion to modify sentence then becomes the triggering device for the defendant's notice of appeal. In this situation, counsel for the defendant should be aware that Pa.R.A.P. 905(a) addresses this problem. In response to an extensive history of appeals that were quashed because of the premature filing of the notice of appeal, the last sentence of Pa.R.A.P. 905(a) was drafted to create a legal fiction that treats a premature notice of appeal as filed after the entry of the appealable order.
>
> Pa.R.Crim.P. 720, cmt., *Miscellaneous* (emphasis in original).

7. Criminal Rule 721 provides that the "Commonwealth may challenge a sentence by filing a motion to modify sentence, by filing an appeal on a preserved issue, or by filing a motion to modify sentence followed by an appeal." Pa.R.Crim.P. 721(A)(1).

8. The Explanatory Comment to Rule 721 states:

clear: the Rules contemplate that a party, whether the defendant or the Commonwealth, must decide between filing a notice of appeal or a post-sentence motion, and once that choice is made, the filing party cannot then elect to follow the unchosen path in addition to the chosen one. Once a party files a post-sentence motion, the Commonwealth argues, it cannot file a notice of appeal until the motion is resolved by a final order or denied by operation of law; and conversely, a party filing a notice of appeal cannot then file a post-sentence motion because the notice of appeal divests the trial court of jurisdiction over a post-sentence motion. *See* Pa.R.A.P. 1701(a) (except as otherwise prescribed, after an appeal is taken, the trial court may no longer proceed further in the matter); 42 Pa.C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry … if no appeal from such order has been taken or allowed."). Further, the Commonwealth argues, Rules 720 and 721 provide that a party cannot be denied the option of litigating a post-sentence motion by the party opponent's decision to file a

Given that a defendant has 10 days to file a post-sentence motion under Rule 720(A)(1), it is possible that the Commonwealth might file a notice of appeal under paragraph (B)(2)(a)(ii) *followed by* the defendant's filing a timely post-sentence motion. When this occurs, the Commonwealth's notice of appeal is rendered premature, because it is the entry of the order disposing of the defendant's post-sentence motion that becomes the triggering device for the Commonwealth's notice of appeal. In this situation, counsel for the Commonwealth should be aware that Pa.R.A.P. 905(a) addresses this problem. In response to an extensive history of appeals which were quashed because of the premature filing of the notice of appeal, the last sentence of Pa.R.A.P. 905(a) was drafted to create a legal fiction that treats a premature notice of appeal as filed after the entry of the appealable order.

Pa.R.Crim.P. 721, cmt., *No Commonwealth Motion to Modify Sentence Filed* (emphasis in original). As we discuss *infra,* the comments to Criminal Rules 720 and 721 indicate that, in certain situations addressed by those Rules, the premature appeal should not be quashed. *See, e.g.,* Pa.R.A.P. 905(a) (notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof); *K.H. v. J.R.,* 573 Pa. 481, 826 A.2d 863, 872 (2003) (appeal from order denying post-trial motions is interlocutory, but where judgment is subsequently entered, premature appeal is treated as filed after final order).

notice of appeal. According to the Commonwealth, the Rules plainly do not allow a party to render his own notice of appeal invalid by filing a subsequent post-sentence motion.

Applying this Rules-based construct to the case *sub judice*, the Commonwealth notes that appellee filed a notice of appeal and then, subsequently, filed a post-sentence motion while the Commonwealth filed nothing. In accordance with the Rules, the Commonwealth argues, appellee's counseled post-sentence motion was a nullity when filed because appellee had already filed a notice of appeal, divesting the trial court of jurisdiction to entertain a post-sentence motion. The Commonwealth acknowledges the complication, highlighted by the Superior Court panel, that appellee filed his notice of appeal *pro se* and without his counsel's knowledge, but argues that the circumstance is immaterial to what it views as a question of jurisdiction. Further, the Commonwealth avers, the Rules draw no distinction between *pro se* filings and counseled filings.

■ The Commonwealth acknowledges that Pa.R.A.P. 3304 is designed to prohibit hybrid representation by requiring that any *pro se* petitions, motions, briefs or other types of pleadings filed by a represented defendant shall not be docketed but instead shall be forwarded to the defendant's counsel of record.[9] The Commonwealth argues that this Rule does not apply to a notice of appeal because it is not a petition, motion, brief or other type of pleading. The Commonwealth claims that the basis for this distinction is obvious. Among the most

9. We note that, by its placement in the Appellate Rules under Chapter 33 ("Business of the Supreme Court"), Rule 3304 governs filings in the Supreme Court only. However, the disapproval of hybrid representation is effective at all levels. *See Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137, 1139 (1993) (criminal defendant has no right to hybrid representation in either trial or appellate courts). Criminal Rule 576(A)(4) addresses hybrid representation before the courts of common pleas, mandating that the *pro se* filing be received and docketed, but then forwarded to counsel: "In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or document that has not been signed by the defendant's attorney, the clerk of courts shall accept it for filing" and send a copy to the attorneys of record in the case. The Superior Court's Internal Operating Procedures, likewise direct that the *pro se* filing be docketed and then forwarded to counsel. Pa.Super. I.O.P. § 65.24.

frequently raised claims under the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.*, are claims that counsel failed to file a requested notice of appeal. To require a clerk of court to determine in which instances a *pro se* notice of appeal results from the abandonment of the defendant by counsel and which are duplicative or the result of hybrid representation would severely overburden the trial court. The Commonwealth concludes that there is nothing in the Rules of Criminal or Appellate Procedure distinguishing between *pro se* and counseled notices of appeal; thus, appellee's appeal should not have been quashed and remanded for further consideration of the later-filed counseled post-sentence motion. Instead, the Commonwealth argues, the Superior Court should have decided appellee's *pro se* appeal on the merits, and as if no post-sentence motion had been filed.

Appellee responds that the procedure outlined in this case and in *Mincavage* is consistent with the Rules of Appellate and Criminal Procedure and, therefore, the Superior Court's decision should be affirmed. He argues that Pa.R.A.P. 1701(b)(3) authorizes a trial court, after an appeal has been filed, to grant reconsideration of the order that is the subject of the appeal if a motion is filed in the trial court within the applicable time limit and an order granting reconsideration is entered by the trial court within the permitted time period. Where this scenario occurs, according to appellee, the timely order granting reconsideration renders the notice of appeal inoperative. Pa.R.A.P. 1701(b)(3). Appellee further claims that the comments to Rule 1701 explain that subsection (b)(3) is intended to cover the exact situation presented in this case—under such circumstances, the trial court is permitted to grant reconsideration where reconsideration is sought during the applicable appeal period and the Rule eliminates the possibility that the power to grant reconsideration is foreclosed by a speedy appeal.[10]

Appellee further claims that he and his counsel complied with the specific requirements of Appellate Rule 1701(b)(3)

10. Appellee's argument on this point does not account for the fact that the trial court here did not grant reconsideration, and indeed **denied** his post-sentence motion on April 10, 2008, before purporting to grant

when appellee filed his *pro se* notice of appeal followed by his counsel's filing a timely post-sentence motion for reconsideration and vacation of appellee's sentence. According to appellee, under Rule 1701(b)(3), the trial court retained jurisdiction to reconsider his sentence because his post-sentence motion was filed within 10 days of the imposition of sentence as required by Criminal Rule 720(A)(1). Further, appellee claims, the trial court denied the motion for reconsideration within 30 days of appellee's post-sentence motion, at which time, the *pro se* notice of appeal was perfected without need for further action by appellee or his counsel.

Appellee urges this Court to interpret Criminal Rules 720 and 721 in conjunction with Appellate Rule 1701(b) because to do otherwise renders Rule 1701(b) meaningless in the context of criminal appeals. He argues that, while the Commonwealth is correct that Rules 720 and 721 govern the timing of the filing of post-sentence motions by either party, and the filing of an appeal in the absence of or following disposition of post-sentence motions, the Commonwealth's argument ignores the plain language of Rule 1701(b)(3), which provides a jurisdictional exception to the general rule that the filing of a notice of appeal divests the trial court of jurisdiction. This exception, appellee claims, allows a trial court to decide a timely post-sentence motion that is filed simultaneously with or subsequent to a notice of appeal. Appellee contends that Appellate Rule 1701(b)(3) controls in the absence of specific language in Criminal Rules 720 and 721 to the contrary.

Turning to the Superior Court's decisions in this case and *Mincavage*, appellee argues that the intermediate court's interpretation of Rules 720 and 721 is consistent with their intended purpose, which is that a defendant who files a *pro se* notice of appeal retains a right to reconsideration under Rules 720 and 721 upon a timely-filed post-sentence motion. Appellee claims that this right flows from the Superior Court's understanding of the spirit of Rules 720 and 721, which is not

reconsideration on July 16, 2008, long after the sentence had been appealed to the Superior Court.

to impede reconsideration in the trial court whether requested by the defendant or the Commonwealth.

Appellee further claims that the holdings in this case and *Mincavage* are consistent with Appellate Rule 3304, which provides that a *pro se* filing by a represented defendant in this Court should not be docketed but rather should be forwarded to counsel of record, citing *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993). According to appellee, both Rule 3304 and *Ellis* prohibit the court from even accepting *pro se* filings by a represented defendant in the interest of promoting judicial economy in the appellate courts. Appellee bases his argument on *Ellis's* holding that a criminal defendant has no right to hybrid representation in either the trial or the appellate courts. Instead, a represented defendant who wishes to proceed *pro se* must demonstrate to the trial court that he is waiving his right to counsel knowingly, intelligently and voluntarily, and absent such a showing, counsel must continue to represent the defendant through the disposition of the case, including appellate review. Appellee claims that a defendant's *pro se* filings have no legal effect while the defendant is represented by counsel. Thus, appellee concludes, his *pro se* notice of appeal should have no legal effect because it was filed by a represented defendant during ongoing representation and without the advice or assistance of counsel. Any other result, he argues, renders counsel useless and compels the defendant to proceed *pro se* when he had no intention of representing himself and never had a colloquy with the trial court on the waiver of his right to counsel.

Appellee requests that this Court find that his *pro se* notice of appeal is without legal effect and that his counseled and timely post-sentence motion preserved his claims involving the discretionary aspects of his sentence. Finally, appellee argues, because the trial court denied his counseled post-sentence motion on April 10, 2008, the counseled notice of appeal filed on April 18, 2008, which the Superior Court quashed as duplicative, should be the appeal of record.[11]

11. Appellee's claim regarding the continuing validity of the April 18 counseled appeal is undermined by his simultaneous argument that the

Although both parties make persuasive discrete points, we are not convinced that the ultimate analysis of either party is correct. The case is a procedural quagmire, for a combination of reasons: the fact that the counseled appellee filed a *pro se* appeal immediately after sentencing; the fact that the clerk of courts did not apprise appellee's counsel of the notice; the fact that the trial court responded both to appellee's *pro se* actions and counsel's post-sentencing actions, and did not copy counsel on the response to the *pro se* filings; the fact that appellee's counsel, once made aware of the *pro se* appeal and after entering an appearance on that appeal, did not seek to withdraw it or have the appeals consolidated; the fact that the Superior Court administratively dismissed the counseled appeal as "duplicative," even though the appeals arguably had very different consequences; [12] the fact of the *Mincavage* decision as existing precedent, and its effect on this appeal; the complication posed by the trial court purporting to grant sentencing reconsideration after it unquestionably was divested of jurisdiction; and the Superior Court's decision to both quash the *pro se* appeal and remand, apparently thereby authorizing the trial court to act upon its second thoughts respecting the post-sentence motion it had already denied and addressed in its opinion. Shorn of the complications, this would be a relatively simple matter: appellee was sentenced; his counsel timely sought reconsideration, thereby preserving specific sentencing claims, which was timely denied; counsel filed a timely notice of appeal and a timely statement of matters complained of on appeal; and the trial court addressed the sentencing claim in its opinion. This is all that is required for merits review in the Superior Court. And,

Superior Court's decision to remand to the trial court should be affirmed. In any event, the record does not reflect any appeal or other challenge to the Superior Court's *sua sponte* dismissal of the April 18 appeal; thus, that dismissal is final.

12. Alternatively, the Superior Court prothonotary could have assigned the second, timely, counseled appeal to a panel for decision, and administratively dismissed appellee's *pro se*, hybrid notice of appeal. Or, the two appeals could have been consolidated. *See* Pa.R.A.P. 513 (where there is more than one appeal from the same order, the appellate court may order that they be argued together).

notwithstanding the complicating factors, we believe that merits review of the sentencing issue is what should have occurred in the Superior Court; and that this course in fact squares with the existing rules. Our reasoning follows.

First, the Rules are not shackles. *See, e.g.,* Pa.R.Crim.P. 101 (criminal rules are intended to provide for just determination of every proceeding, and should be construed to secure simplicity, fairness and elimination of delay); Pa.R.A.P. 104 ("In all cases not provided for by rule, the appellate courts may regulate their practice in any manner not inconsistent with these rules."); Pa.R.A.P. 105 (rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable). Thus, this Court did not require an existing rule respecting hybrid representation in order to address the issue of concern in *Commonwealth v. Ellis;* the Rule, as it exists now, derives from the case.

Furthermore, both the Rules of Appellate Procedure and the Rules of Criminal Procedure expressly provide that they shall be construed according to principles of statutory construction. *See* Pa.R.A.P. 107 (rules of statutory construction "shall be applicable to the interpretation of these rules and all amendments hereto as if these rules were enactments of the General Assembly"); Pa.R.Crim.P. 101(c) ("To the extent practicable, these rules shall be construed in accordance with the rules of statutory construction."). Pursuant to the Statutory Construction Act, a court's proper role in interpreting and construing a statute is to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(a). Generally, when the language of a statute is clear and free from all ambiguity, a court should not disregard the letter of the statute in order to pursue its spirit. 1 Pa.C.S. § 1921(b); *Diehl,* 607 Pa. 254, 5 A.3d at 243 (citing *Spahn v. Zoning Bd. of Adjustment,* 602 Pa. 83, 977 A.2d 1132, 1142 (2009)). Neither the Commonwealth nor appellee argues that the Rules at issue are ambiguous; thus, we are guided by their plain language.

Viewed from this perspective, we have difficulty with the approach in the *Mincavage* case. The *Mincavage* panel de-

termined that it did not have jurisdiction to decide what it deemed to be a premature appeal, filed *pro se* by a counseled defendant before his lawyer had an opportunity to file a post-sentence motion on his behalf. The panel cited the commentary to Criminal Rule 720, regarding the effect of a post-sentence motion filed by the **Commonwealth**, for the proposition that the defendant's *pro se* notice of appeal was rendered premature by **his own counsel's** subsequent filing of a post-sentence motion. The *Mincavage* panel concluded that "this rationale applies with equal vigor regardless of who filed the post-sentence motion" and quashed the appeal as premature. For the reasons accurately identified by the Commonwealth here, this reading is not supported by the language of the Rule. This is not to say that the *Mincavage* panel's instinct was incorrect under the circumstances of that case—the 30-day appeal clock had not yet begun to run against the defendant because there had been no decision on his timely, counseled post-sentence motion. But, the plain language of the Rules relates not to the filings of a single party, but instead to the principle that one party cannot foreclose the opposing party's right to file a post-sentence motion simply by filing a snap appeal. *See* Pa.R.Crim.P. 720(A)(2) (if defendant files timely post-sentence motion, notice of appeal shall be filed within 30 days of order deciding motion); Pa.R.Crim.P. 720(A)(4) (if Commonwealth files timely motion to modify sentence, defendant's appeal shall be filed within 30 days of the order disposing of the motion).

We have a separate difficulty with the Superior Court's application of *Mincavage* here. The Superior Court apparently did not recognize a material difference between *Mincavage* and the facts of this case. In *Mincavage*, the trial court never ruled upon the counseled post-sentence motions, believing that it had been divested of jurisdiction by the defendant's earlier *pro se* appeal, and the panel indicated that the undecided sentencing claims had been waived as a result of the premature appeal. 945 A.2d at 236. The *Mincavage* panel deemed quashal and remand to the trial court for consideration of the counseled post-sentence motion warranted, in order to ensure

that the sentencing claims could be preserved. *Id.* In this case, however, the trial court had already considered and denied appellee's counseled post-sentence motion, ordered a Rule 1925(b) statement, and filed its Rule 1925(a) opinion addressing the merits of the sentencing claim before the Superior Court considered the case. The appeal may have been premature when filed; but the subsequent actions of counsel and the trial court fully ripened it.[13]

In construing the Rules at issue in this appeal, we are mindful of the directive that specific rules take precedence over general rules:

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933. *See Mechanical Contractors Ass'n of Eastern Pennsylvania, Inc. v. Commonwealth, Dep't of Educ.,* 594 Pa. 224, 934 A.2d 1262, 1272 (2007).

We first consider the general precept set forth in Appellate Rule 1701, which provides: "Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a). Rule 1701 then lists the actions a trial

13. Of course, we recognize that the panel's decision to quash and remand may have been influenced by its awareness of the trial judge's intention to subsequently grant reconsideration *sua sponte* and significantly reduce appellee's VOP sentence. Irrespective of the Superior Court's intentions, as we explain below, the panel's determination that the "premature" appeal was also somehow void is erroneous. If the reconsideration represented by the trial court's second thoughts is a basis for appellate relief and resentencing, it should derive from the merits of the appeal, and not the unexplained procedural circumstances.

court is authorized to perform once an appeal is taken, only one of which could be applicable here:

(3) Grant reconsideration of the order which is the subject of the appeal or petition, if:

(i) an application for reconsideration of the order is filed in the trial court or other government unit within the time provided or prescribed by law; and

(ii) an order expressly granting reconsideration of such prior order is filed in the trial court or other government unit within the time prescribed by these rules for the filing of a notice of appeal or petition for review of a quasijudicial order with respect to such order, or within any shorter time provided or prescribed by law for the granting of reconsideration.

A timely order **granting** reconsideration under this paragraph shall render inoperative any such notice of appeal or petition for review of a quasijudicial order theretofore or thereafter filed or docketed with respect to the prior order. The petitioning party shall and any party may file a praecipe with the prothonotary of any court in which such an inoperative notice or petition is filed or docketed and the prothonotary shall note on the docket that such notice or petition has been stricken under this rule. Where a timely order of reconsideration is entered under this paragraph, the time for filing a notice of appeal or petition for review begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the trial court or other government unit. No additional fees shall be required for the filing of the new notice of appeal or petition for review.

Pa.R.A.P. 1701(b)(3) (emphasis added).

This exception to the general rule that the filing of a notice of appeal divests the trial court of jurisdiction renders a notice of appeal ineffective only if a timely motion for reconsideration is both filed and granted. The exception dovetails with Criminal Rules 720 and 721, both of which indicate that no direct

appeal may proceed while a timely post-sentence motion or motion to modify sentence is pending, and any such appeal is rendered premature. *See* Pa.R.Crim.P. 720, cmt., *Timing;* Pa.R.Crim.P. 721, cmt., *No Commonwealth Motion to Modify Sentence Filed.* Thus, in an appropriate case where a post-sentence motion is **granted,** there is no conflict between Rule 1701, governing appeals generally, and Rules 720 and 721, which specifically govern appeals in criminal matters. However, the rules do not clearly govern the facts in this case for two reasons. First, the trial court **denied** the timely post-sentence motion filed by counsel on April 7, 2008; thus, Rule 1701(b)(3) was never triggered and could not have affected the trial court's authority to rule on that motion.[14] Second, the Rules do not distinguish between filings by defendants who are acting *pro se,* and filings by counsel.

The answer is not in Appellate Rule 1701 and Criminal Rules 720 and 721, but in a proper understanding of the jurisdictional effects of *pro se* filings in cases involving issues of hybrid representation. The proper analysis implicates our decision in *Ellis,* Criminal Rule 576(A)(4), Appellate Rule 3304, as well as rules and caselaw regarding the effect of prematurely filed appeals. *See, e.g.,* Pa.R.A.P. 905(a); *K.H. v. J.R.,* 573 Pa. 481, 826 A.2d 863, 872 (2003).

Here, the counseled appellee was sentenced on Thursday, March 27, 2008, and filed his *pro se* appeal on Monday, March 31, 2008. The clerk of courts accepted the notice of appeal for filing, and made an entry in the trial court docket. The proof of service reflects that appellee's counsel was not served with the *pro se* filing, although appellee served the Commonwealth by first class mail. To make matters worse, the clerk of courts apparently did not comply with Criminal Rule 576(A)(4), which requires a copy of a *pro se* filing, made by a counseled defendant, to be forwarded to the attorneys in the

14. Moreover, Appellate Rule 1701(b)(3) did not authorize the trial court to grant reconsideration when it purported to do so on July 16, 2008. Appellee's post-sentence motion was denied on April 10, 2008, there was no additional motion filed in the trial court, and any further reconsideration was foreclosed after 30 days in any event. *See* Pa. R.A.P. 1701(b)(3)(i)-(ii).

case.[15] The matter was further complicated when the trial judge served his 1925(b) order on appellee and the Commonwealth, but not on appellee's counsel.[16]

These procedural missteps respecting notice to counsel are unexplained: counsel never sought to withdraw his appearance, abandoned appellee, or refused to pursue post-sentence motions or an appeal on appellee's behalf. See Pa.R.Crim.P. 120(B)(1) (counsel for defendant may not withdraw appearance except by leave of court); Pa.R.Crim.P. 122(B)(1) (when counsel is appointed, appointment is effective until final judgment, including any proceedings on direct appeal). In fact, counsel filed a timely post-sentence motion on April 7, 2008, and averred it was filed "as per the client's request." And, upon denial of the post-sentence motion on April 10, 2008—the "triggering event" for the thirty day appeal period under Criminal Rule 720—counsel filed a timely notice of appeal.

If the clerk of courts had properly notified counsel about the *pro se* notice of appeal, in accordance with Criminal Rule 576(A)(4), counsel could have taken action within the thirty day appeal period to eliminate the complication caused by the *pro se* appeal, such as withdrawing it. Notably, there was no other impediment to the proper consideration of appellee's sentencing claim on appeal: the issue was preserved in counsel's post-sentencing motion; the trial court denied the motion; and the trial court addressed the issue in its opinion. To

15. The Comment to Criminal Rule 576(A)(4) indicates that "the requirement that the clerk time stamp and make docket entries of the filings in these cases only serves to provide a record of the filing, and does not trigger any deadline nor require any response." The dissent relies on this disclaimer regarding the legal import of the *pro se* filing as further support for viewing it as a nullity, but, in this case, the clerk's failure to comply with the Rule's mandate that the *pro se* filing be forwarded to counsel undermines that position. The dissent perceives our view of the Rule's requirement as overburdening the trial court with a duty to "scrutinize such filings for after-the-fact significance," Dissenting Op. at 465, 27 A.3d at 1011, but it provides instead a minimally burdensome safeguard to prevent the very confusion that arose here in its breach.

16. The trial court issued its 1925(b) order in response to the *pro se* notice of appeal, further undermining the dissent's view that the filing was unconditionally void, and that the trial court could easily discern its hybrid nature at that time.

make matters worse, instead of reaching the merits, the Superior Court administratively quashed the counseled appeal as "duplicative" of the *pro se* appeal, and ultimately determined that the *pro se* appeal was a nullity. In fact, the counseled appeal was not duplicative; because appellee at all times was counseled, and the first appeal was filed *pro se*, the counseled appeal was a proper one.[17]

Appellee's *pro se* notice of appeal was indeed premature, in the sense that he filed it on his own, while still ostensibly represented by counsel, and before his appointed counsel had an opportunity to file a post-sentence motion on his behalf. The notice of appeal also was ill-advised: the unschooled appellee did not realize that he had to preserve sentencing claims by filing a post-sentence motion. Moreover, it was a complicating *pro se* filing by a defendant with appointed counsel of record, and instigated various procedural problems that are endemic to hybrid representation, and because of which such representation is not permitted. *See Ellis, supra.* But the prescribed procedure, designed to avoid the confusing result of *pro se* filings by represented criminal defendants, was not followed.[18]

Under the circumstances of this case, where the trial court ruled on the appellee's post-sentence motion and thus entered a final appealable order, we view the *pro se* appeal as merely premature, duplicative of the later counseled appeal, and subject to withdrawal or quashal on those grounds. But, contrary to the Superior Court panel's determination, it definitely was not a "nullity," especially once the counseled appeal was dismissed. The proper way to view the *pro se* appeal, after the counseled appeal was dismissed, is as a premature

17. We reject the Commonwealth's argument, based on the language of Pa.R.A.P. 3304, that the restrictions on hybrid representation do not apply to *pro se* notices of appeal. Appellate Rule 3304 applies to filings in this Court only. The relevant rule in this instance is actually Pa.R.Crim.P. 576(A)(4), which expressly applies to a "notice" filed *pro se* in the trial court by a counseled defendant.

18. The dissent views these errors as a breakdown in the court's operations that might have warranted a *nunc pro tunc* appeal, Dissenting Op.

appeal that was perfected upon the trial court's proper consideration and denial of the counseled post-sentence motions.[19] The Superior Court should have decided the merits of the appeal which remained before it (1055 EDA 2008) after it dismissed, on mere administrative grounds, the subsequently filed, counseled appeal (1230 EDA 2008). To the extent *Mincavage* directs otherwise, it is disapproved.

This result squares with this Court's overall treatment of appeals that are merely premature. Although Criminal Rule 720 does not expressly apply to these precise facts, the Explanatory Comments reflect the recognition of the common

at 465–66, 27 A.3d at 1012, but the parties have not made such an argument.

19. The dissent takes issue with our conclusion that the *pro se* notice of appeal was not automatically a legal nullity but rather a premature filing, opining that this conclusion is in conflict with *Commonwealth v. Piscanio*, 530 Pa. 293, 608 A.2d 1027 (1992). In *Piscanio*, a represented defendant filed a *pro se* notice of appeal from the denial of bail. While the appeal on the bail issue was pending, the defendant was tried and convicted on charges relating to passing bad checks. The question before the Court was whether the trial court could proceed with trial on the merits after the defendant filed his *pro se* notice of appeal of the bail question, despite Rule 1701. The Court concluded that, because the subject matter of the appeal was distinct from the charges for which the defendant was tried, Rule 1701 did not divest the trial court of jurisdiction.

Respectfully, we believe that *Piscanio* is distinguishable from this case for several reasons. First, the legal nullity language relied upon by the Dissent was not part of the holding in *Piscanio*, but rather confined to a footnote noting that the defendant was never granted leave to proceed *pro se;* therefore, his *pro se* notice of appeal from the denial of bail was deemed a legal nullity. Second, the criminal proceedings in *Piscanio* were ongoing, and the fact of the defendant's continued representation by counsel apparently was clear. This case involves a notice of appeal from a final judgment of sentence. Given that our cases have recognized that a criminal defendant has a right to self-representation on appeal, *see Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998); *but see Commonwealth v. Staton*, 608 Pa. 404, 12 A.3d 277 (2010) (noting that federal constitution does not recognize such a right), the fact of counsel's continued representation is not automatic. This is particularly so in the case of retained counsel. Finally, an appeal from the denial of bail is interlocutory (and collateral to the main issues at trial), while an appeal from a judgment of sentence is not. The factual context of this unusual case supports our determination that the *pro se* appeal here was merely premature, rather than automatically void. The dissent's reference to *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282 (2010), where the *pro se* appeal was filed while appellant was clearly represented on appeal, is also inapposite, in our view.

problem arising from "premature" appeals: "In response to an extensive history of appeals that were quashed because of the premature filing of the notice of appeal, the last sentence of Pa.R.A.P. 905(a) was drafted to create a legal fiction that treats the premature appeal as being filed after the entry of the appealable order." Pa.R.Crim.P. 720, cmt., *Miscellaneous*. Appellate Rule 905(a)(5) applies to "appeals from lower courts" generally, and it indeed states: "A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the date thereof." *See also K.H., supra* (appeal from order denying post-trial motions is interlocutory, but where judgment is subsequently entered, premature appeal is treated as filed after the final order); *Fernandez v. Levin,* 519 Pa. 375, 548 A.2d 1191 (1988) (appeal filed after exceptions to non-jury verdict were dismissed but before final judgment was entered was premature; but, appeal was perfected when final, appealable order was subsequently entered). The result also is supported by our overarching concern that our procedural rules are intended to ensure the just, speedy, and efficient disposition of all matters. *See* Pa.R.Crim.P. 101; Pa.R.A.P. 105. *See also Commonwealth v. Lockridge,* 570 Pa. 510, 810 A.2d 1191, 1195 (2002) (it is appropriate for court to consider explanatory comments in context of construing and applying the rule).

Here, appellee was sentenced and filed a snap *pro se* notice of appeal. Subsequently, his counsel filed a timely post-sentence motion, which was denied, and then a second timely notice of appeal. The merely premature *pro se* appeal did not divest the trial court of jurisdiction to act upon the timely post-sentence motion later filed by appellee's own counsel in accordance with Criminal Rule 720(A). Once the motion was decided, the thirty day appeal clock was triggered. Pa. R.Crim.P. 720, cmt., *Timing* ("When a defendant files a timely post-sentence motion, the 30–day period for the defendant's direct appeal ... is triggered by the trial judge's decision on the post-sentence motion"). Under the circumstances, where the proper, counseled appeal was quashed administratively,

the subsequently-assigned Superior Court panel should have treated the premature appeal as if it had been filed after denial of the post-sentence motion in accordance with Pa. R.A.P. 905(a)(5). The panel should have considered and ruled upon the merits of the claims as briefed in Superior Court and also preserved in the post-sentence motion, (initially) rejected by the trial court, preserved in a 1925(b) statement filed by counsel on May 22, 2008, and discussed by the trial court in its 1925(a) opinion dated June 12, 2008. The Superior Court had everything it needed to dispose of the appeal on its merits, and there was no basis for returning the matter to the trial court.

For the foregoing reasons, we hold that the Superior Court erred in quashing the appeal and remanding to the trial court for further consideration of appellee's counseled post-sentencing motions. We therefore vacate the order below and remand to the Superior Court for consideration of the merits of appellee's direct appeal from the VOP judgment of sentence.

Jurisdiction relinquished.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Justices SAYLOR, EAKIN and McCAFFERY join the opinion.

Justice TODD files a dissenting opinion in which Justice BAER joins.

Justice TODD, dissenting.

The majority has offered a cogent approach for untangling the procedural quagmire before us. Were I able to accept the majority's premise that Appellee's *pro se* appeal was "merely premature," Majority Opinion at 457, 27 A.3d at 1007, I would have little quarrel with its resultant analysis. However, I cannot accept this premise. Rather, in my view, our caselaw and procedural rules support a conclusion that Appellee's *pro se* appeal was a legal nullity, and I find such a determination

most in accord with our established prohibition on hybrid representation. Accordingly, for the following reasons, I respectfully dissent.

The majority concludes that Appellee's *pro se* appeal, filed while he was represented by counsel, was "merely premature," noting that, while it was "duplicative of the later counseled appeal, and subject to withdrawal or quashal on those grounds," it "definitely was not a 'nullity'." Majority Opinion at 457, 27 A.3d at 1007. The majority reasons that "[t]he proper way to view the *pro se* appeal, after the counseled appeal was dismissed, is as a premature appeal that was perfected upon the trial court's proper consideration and denial of the counseled post-sentence motions." *Id.* at 457–58, 27 A.3d at 1007. Respectfully, in my view, this conclusion is contradicted by our caselaw and rules.

Grounded in our prohibition against hybrid representation, this Court has approved lower courts' refusals to review *pro se* pleadings and briefs filed by counseled criminal litigants. *See Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993) (approving Superior Court's refusal to consider counseled litigant's *pro se* brief); *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293 (1999) (approving post-conviction court's refusal to consider issues raised in counseled appellant's *pro se* petition). Recently, in *Commonwealth v. Jette*, 611 Pa. 166, 23 A.3d 1032 (2011), we reaffirmed *Pursell* and *Ellis*, and "reiterate[d] that the proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion." *Id.* at 1044 (rejecting Superior Court's procedure requiring postconviction appellate counsel to seek remand to address *pro se* claims of counsel's ineffectiveness).

Critically, based on that same prohibition against hybrid representation, this Court and the Superior Court have deemed *pro se* filings of counseled criminal litigants to be of "no legal effect" and "nullities." *See Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 293 (2010) (characterizing as a "legal nullity" appellant's *pro se* Pa.R.A.P. 1925(b) statement and, thus, rejecting argument that the statement preserved any issues on appeal, citing *Ellis* ); *Commonwealth v. Piscanio*, 530 Pa. 293, 298 n. 3, 608 A.2d 1027, 1029 n. 3 (1992)

(characterizing as a nullity counseled appellant's *pro se* appeal from order denying bail); *Commonwealth v. Nischan,* 928 A.2d 349, 355 (Pa.Super.2007) (rejecting as "a nullity, having no legal effect" counseled appellant's *pro se* post-sentence motion, citing *Ellis* and *Piscanio* ); *Commonwealth v. Hall,* 327 Pa.Super. 390, 476 A.2d 7, 9–10 (1984) (rejecting *pro se* appeal of order denying writ of *habeas corpus* by counseled appellant). Indeed, of particular import for the instance case, in *Piscanio, supra,* this Court rejected a counseled appellee's *pro se* appeal from an order denying bail. As an alternate basis for affirming the trial court's continued jurisdiction, we reasoned that, "[b]ecause Appellee's *pro se* actions have no legal effect while defense counsel remains authorized to represent him in all aspects of the proceedings, Appellee's *pro se* appeal from the order denying bail was a nullity which would not prevent the trial court from instituting trial." [1] *Piscanio,* 530 Pa. at 298 n. 3, 608 A.2d at 1029 n. 3; *see also Hall,* 476 A.2d at 9–10 ("An accused's *pro se* [appeal has] no legal effect while defense counsel remains authorized to represent the accused in all aspects of the proceedings."); Standard Pennsylvania Practice § 132:109 (same). Herein, the majority's approach—which lends conditional legal significance to Appellee's *pro se* notice of appeal—fails to fully account for this precedent and, in particular, conflicts with *Piscanio.* [2]

**1.** In observing that this reasoning was somehow not part of our holding in *Piscanio, see* Majority Opinion at 458 n. 19, 27 A.3d at 1007 n. 19, the majority overlooks our explicit statement to the contrary: "This claim [by the Commonwealth that Appellant was still represented by counsel] presents an *alternative basis* on which to find that the trial court properly proceeded with Appellee's trials." *Piscanio,* 530 Pa. at 298 n. 3, 608 A.2d at 1029 n. 3 (emphasis added). Further, as I discuss below, I am unpersuaded by the majority's attempt to diminish the import of this case because of the ease with which the fact of hybrid representation was discernible. *See infra* note 6.

**2.** I recognize that *Piscanio* and *Hall* were decided when Pa.R.Crim.P. Rule 576 required *pro se* filings not be docketed, but merely forwarded to record counsel, and now the Rule provides that such filings should be docketed. *Compare* Pa.R.Crim.P. 576(C) (2003) *with* Pa.R.Crim.P. 576(A)(4). As discussed *infra,* however, commentary to the amended Rule emphasizes the purely evidentiary nature of the docketing requirement.

In addition, while I agree with the majority that Pa. R.Crim.P. Rule 576(A)(4) applies to the *pro se* notice of appeal herein, see Majority Opinion at 457 n. 17, 27 A.3d at 1006 n. 17, the commentary to that Rule suggests such *pro se* filings have no legal import. While Rule 576 states that the clerk "shall accept [a *pro se* notice] for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the document in the criminal case file," Pa.R.Crim.P. Rule 576(A)(4), the commentary emphasizes that the filing is docketed as purely an evidentiary matter: "The requirement that the clerk time stamp and make docket entries of the filings in these cases only serves to provide a record of the filing, and does not trigger any deadline nor require any response." *Id.* cmt. This commentary suggests to me that *pro se* filings made by counseled litigants are to have little or no legal significance.[3,4]

Instead of hewing to this authority, the majority devises a new type of appeal not expressly contemplated by our rules, one which is not interlocutory, but yet one which does not trigger Pa.R.A.P. 1701's jurisdictional mandates.[5] *See* Pa. R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may

---

3. Although Rule 576 does not specify, I presume the *pro se* filing is recorded so that it may, for example, be considered in determining a litigant's entitlement to *nunc pro tunc* relief, as such a filing would be relevant in assessing a claim that the defendant intended for counsel to file an appeal.

4. The majority contends that the prothonotary's failure in the instant case to follow this rule by forwarding the notice of appeal on to counsel undermines this conclusion. *See* Majority Opinion at 456 n. 15, 27 A.3d at 1006 n. 15. I disagree. While the rule was not followed herein, and while this failure would factor into a grant of *nunc pro tunc* relief as I discuss below, a failure to adhere to a rule in any given case cannot drive this Court's overall interpretation of our procedural rules.

5. The majority rightly notes that, if one party—be it the Commonwealth or the defendant—files a notice of appeal and then a timely post-sentence motion is filed *by the other party,* Rule 720 and 721 of our criminal rules render the notice of appeal premature. *See* Majority Opinion at 451–53, 27 A.3d at 1003–04; Pa.R.Crim.P. 720 & 721. As the majority further emphasizes, however, this feature of Rule 720 and 721 has no application herein.

no longer proceed further in the matter."). Here, the *pro se* notice of appeal was not interlocutory, as it was undoubtedly an appeal from a final order—the judgment of sentence. Thus, under Pa.R.A.P. 1701, that appeal, if given any legal effect, would have stripped the trial court of jurisdiction, and thereby preventing the trial court from entertaining the post-sentence motion later filed by the Appellee's counsel. Indeed, had **counsel** filed the first notice of appeal, there would presumably be no question about this. While a counseled appeal, filed prior to a post-sentence motion, certainly would have handicapped any sentencing-based issues on appeal, *see Commonwealth v. Reeves,* 778 A.2d 691, 692 (Pa.Super.2001) (failure to file post-sentence motion waived appellate challenge to discretionary aspect of a sentence), it would not have been interlocutory.

However, while this *pro se* appeal was not interlocutory, the majority does not allow for the operation of Pa.R.A.P. 1701, which strips the trial court of jurisdiction where an appeal is filed, instead finding the appeal to be "merely premature." The majority, by this new construct, thus approves the trial court's jurisdiction in addressing the post-sentence motions filed by counsel. In this regard, I do not find the majority's analogy to our treatment of other premature appeals to be persuasive. *See* Majority Opinion at 458–59, 27 A.3d at 1007–08 (citing, *inter alia, K.H. v. J.R.,* 573 Pa. 481, 826 A.2d 863 (2003)). In *K.H.,* this Court allowed the fiction that an otherwise **interlocutory** appeal, one filed before the entry of a final order (the civil judgment) would be viewed as having been filed after the entry of final judgment, thus maturing the appeal once judgment was entered. *See also* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination **but before the entry of an appealable order** shall be treated as filed after such entry and on the day thereof." (emphasis added)). In cases of interlocutory appeals, Pa.R.A.P. 1701(b)(6) specifically authorizes the trial court's continuing jurisdiction. Thus, the court is jurisdictionally authorized to enter judgment, and there is no impediment to deeming its act of entering judgment as the trigger for maturing the interlocutory appeal—that is, throughout the

process, the trial court's jurisdiction is secure. The same is not true under the majority's approach: our appellate rules presently do not contemplate treating the instant *pro se* appeal, taken from a final order, as "premature," or somehow ineffective.

Further, unlike in *K.H.*, the majority's approach herein is not a regular, predictable one, but rather is based on multiple contingencies: in *K.H.*, jurisdiction was settled upon the entry of judgment; here, it seems the *pro se* appeal has jurisdictional effect *only if* a counseled appeal is also later filed *and* that appeal is subsequently dismissed. *See* Majority Opinion at 457–58, 27 A.3d at 1007 (The *pro se* appeal "definitely was not a 'nullity', especially once the counseled appeal was dismissed. The proper way to view the *pro se* appeal, after the counseled appeal was dismissed, is as a premature appeal that was perfected upon the trial court's proper consideration and denial of the counseled post-sentence motions."). In my view, this is an awkward approach to matters affecting jurisdiction.

Finally, despite our prohibition on hybrid representation, by lending conditional legal significance to a *pro se* notice of appeal, the majority, in my view, encourages such filings. Indeed, despite representation by counsel, why would a criminal defendant not file a *pro se* appeal in the hope that a court would later deem it worthwhile? The majority burdens lower courts and parties to scrutinize such filings for after-the-fact significance. This is the type of confusion our rules prohibiting hybrid representation are intended to prevent. *See Jette*, 23 A.3d at 1038 ("The only thing [the counseled criminal litigant] may not do is confuse and overburden the court by his own *pro se* filings at the same time his counsel is filing briefs on his behalf." (quoting *Ellis, supra* )).[6]

I recognize the myriad irregularities present in this case—chief among them, in my view, the prothonotary's failure to

6. As a distinguishing point, the majority emphasizes that in this case, *see* Majority Opinion at 456 n. 16, 27 A.3d at 1006 n. 16, and in *Piscanio* and *Ali, see* Majority Opinion at 458 n. 19, 27 A.3d at 1007 n. 19, the hybrid nature of the defendants' representation was easily determinable, implying that such is not normally the case. In this regard, however, it is unclear to me what more is required of a court's prothonotary, in reviewing a *pro se* filing, than to review the relevant court dockets—specifically, for counsel's entry of appearance or appointment, and to see whether any motion to withdraw has been

forward the *pro se* notice of appeal to counsel of record in contravention of Pa.R.Crim.P. 576. *See* Majority Opinion at 450–51, 27 A.3d at 1002. And I respect the majority's attempt to give Appellee the benefit of his *pro se* filing under the odd circumstances of this case. Nevertheless, I conclude its approach does not comport with our precedent or rules, undermines our prohibition on hybrid representation, and as a guideline to the bench and bar does more mischief than good. Rather, I would enforce our prohibition against hybrid representation by treating Appellee's *pro se* appeal as a legal nullity, with no effect on the proceedings below. I conclude that approach, better than the one fashioned by the majority, best avoids "the confusing result of *pro se* filings by represented criminal defendants." Majority Opinion at 457, 27 A.3d at 1007.[7]

Accordingly, in the instant case, I would conclude Appellee's *pro se* appeal at 1055 EDA 2008 was a nullity;[8] thus, the only extant appeal was the one subsequently filed by counsel at 1230 EDA 2008, which was administratively dismissed by the Superior Court as "duplicative."[9] Therefore, in the Superior

granted. While, as the majority notes, a criminal defendant has the right to self-representation, such a right is not self-executing, requires court approval, and would be readily discernible on the relevant docket. Indeed, in the case of appointed counsel, our criminal rules require counsel, unless leave to withdraw is granted, to retain his appointment up to and through any appeal to this Court. *See* Pa.R.Crim.P. 122(B)(2) & cmt. Admittedly, for retained counsel, our rules are arguably ambiguous (and worth clarifying) in this regard. *Compare* Pa.R.Crim.P. 120(A)(4) (counsel must "continue such representation through direct appeal or until granted leave to withdraw") *with* Pa.R.Crim.P. 120(B)(1) (counsel "may not withdraw his or her appearance except by leave of court"). Regardless, I am unpersuaded by the majority's implication that determining whether a defendant is represented at any given time is an involved matter. Indeed, of particular relevance for this case, a notice of appeal is filed in the trial court, not the appellate court, Pa.R.A.P. 905(a)(1); thus, in this case, the review I am suggesting implicates only one court docket.

7. I would further refer this matter to the appropriate rules committees for implementation of this approach.

8. As I would conclude this appeal was a nullity, the trial court properly addressed the post-sentence motions subsequently filed by counsel.

9. As the majority notes, Appellee could have, but did not, appeal this dismissal.

Court's review of the *pro se* appeal at 1055 EDA 2008, there was no jurisdictional foundation for the court to implement its remand procedure under *Commonwealth v. Mincavage*, 945 A.2d 233 (Pa.Super.2008). On that basis, I would vacate the order of the Superior Court.

Appellee would not be without an avenue for appellate relief, however. Were Appellee hereafter to seek leave to file an appeal *nunc pro tunc* in the trial court (from the order rejecting the post-sentence motions filed by counsel), in my view, under the extraordinary circumstances of this case, where there were procedural errors on the part of the clerk of courts, the trial court, and the Superior Court which thwarted counsel's ability to respond to Appellee's *pro se* filing, it would be a proper exercise of discretion to grant such leave.[10] *See Commonwealth v. Stock*, 545 Pa. 13, 18–19, 679 A.2d 760, 763–64 (1996) (discussing that "an appeal nunc pro tunc is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances" such as a breakdown in the court's operations).

For these reasons, I respectfully dissent.

Justice BAER joins this dissenting opinion.

---

10. The majority misapprehends my position in this regard. *See* Majority Opinion at 457 n. 18, 27 A.3d at 1007 n. 18. I proffer *nunc pro tunc* relief as a *prospective* possibility for resurrection of Appellee's appellate rights, which he would have available were this Court to simply vacate the Superior Court's order as I propose.