**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jodie L. DICKEN, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 28, 2005.
Filed March 10, 2006.

Joseph J. Kearney, New Castle, for appellant.

Matthew T. Mangino, Asst. Dist. Atty., New Castle, for Com., appellee.

BEFORE: MUSMANNO, KLEIN and JOHNSON, JJ.

OPINION BY KLEIN, J.:

¶ 1 Jodie L. Dicken appeals from the judgment of sentence after entering an open guilty plea to number of drug offenses,[1] receiving a total sentence of 5–20 years in a state facility. Dicken filed a pre-sentence motion to withdraw her guilty plea, claiming that she should have been allowed to withdraw her plea because she is not guilty of the charges and be-

cause counsel coerced her into entering it. Because we agree with the trial court's conclusion that the Commonwealth would be "substantially prejudiced" in bringing the case to trial if Dicken were permitted to withdraw her plea, we affirm.

***Facts***

¶ 2 Responding to a domestic dispute, police arrived at Dicken's garage and found her in the presence of her two minor sons, armed with a knife and Benzomatic torch. Scattered around the garage were several chemical cans and arranged on a workbench were various drug paraphernalia associated with methamphetamine production. Dicken's sons were helping her scrape red phosphorus from matchbook covers which is used in the process of manufacturing methamphetamine.

¶ 3 On October 15, 2003, the day her case was called for trial and *after* the jury was selected and sworn, but *before* any testimony was presented for trial, Dicken entered a guilty plea upon the advice of counsel.[2] Counsel testified that he and Dicken were informed before the start of trial that the Commonwealth was prepared to rebut any defense they may have had regarding Dicken's lack of involvement in and knowledge of how to set up a meth lab. Specifically, the prosecutor revealed that the Commonwealth had secured a witness who would state that while Dicken lived with a co-defendant in Arizona, the two of them had run a meth lab. Because this was exactly the defense that Dicken planned to use at trial, counsel claims she was persuaded to enter the guilty plea.

---

1. Specifically, Dicken was charged with manufacture of a controlled substance, possession with intent to manufacture a controlled substance, possession of a controlled substance, possession with intent to deliver a controlled substance, delivery of a controlled substance, possession of drug paraphernalia, recklessly endangering another person, risking a catas-

trophe, criminal conspiracy with intent to manufacture a controlled substance, corruption of minors and disorderly conduct.

2. We note that on July 2, 2003, Dicken rejected a plea offer of 4 ½—10 years, plus 5 years' probation.

¶ 4 The record reveals that the trial court held a guilty plea colloquy[3] during which Dicken's defense attorney made it clear to her that she would not have the automatic right to withdraw the plea because the jury had already been selected, jeopardy had attached, and the Commonwealth had taken several substantial measures in preparation for trial. *See* N.T. Guilty Plea Colloquy, 10/15/2003. Dicken responded that she understood this rule and its implications and that if she were to later claim her innocence in connection with a plea withdrawal request, she would not be given the same latitude to do so had she elected to withdraw the plea before the jury was picked. In addition, Dicken replied that she was satisfied with her attorney's representation and admitted her guilt to all the charged offenses. *Id.* at 18–23.

¶ 5 Dicken later informed the Public Defender's Office in writing that she wanted to withdraw her plea because she did not believe counsel was acting in her best interests. Specifically, Dicken claimed that when the jury was being selected for trial, her attorney coerced her into entering the open plea. After new counsel was appointed to represent Dicken, the court held a plea withdrawal hearing on August 31, 2004. Ultimately the trial court denied the motion finding that the Commonwealth had numerous witnesses on standby from other states (Arizona, New York, and Ohio) that would be inconvenienced by withdrawal of the plea at this stage in the process. The court noted that these witnesses would have disputed Dicken's defense that she did not have knowledge of how to manufacture the controlled substance in question (methamphetamine) and that they would have to be relocated or replaced if the case were to go to trial.

Moreover, the trial court relied on the fact that a full guilty plea colloquy had been conducted, which established that Dicken's plea was knowing and voluntary and included Dicken's statement under oath that she was pleading guilty because she was in fact guilty of the charges. Finally, the court felt that Dicken's admission of innocence just prior to trial was in complete contradiction to her admission of the facts supporting the element of each offense to which she pled guilty in the colloquy.

¶ 6 The Commonwealth opposed Dicken's withdrawal motion claiming that it would be further prejudiced if she were allowed to withdraw her plea because she had already obtained a preview of its evidence and could adjust her trial strategy accordingly. Moreover, the Commonwealth made clear that it would suffer a significant expense to relocate witnesses that were ready and prepared to testify in October of 2003—nearly two years after Dicken entered her plea.

### Discussion

■■■■ ¶ 7 Typically, in determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, the test to be applied by trial courts is fairness and justice. *Commonwealth v. Robinson,* 228 Pa.Super. 179, 324 A.2d 790 (1974). While there is no absolute right to withdraw a guilty plea, if the trial court finds any fair and just reason, withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been substantially prejudiced. *Id.* Moreover, a defendant's bald assertion of innocence will not constitute fair and just reason for allowing withdrawal of guilty plea. *See Commonwealth v. Kasecky,* 442 Pa.Super. 139, 658 A.2d 822 (1995).

---

**3.** Dicken also completed and signed a written guilty plea waiver. *See* Record, Guilty Plea Colloquy Based Upon Recommendation, 10/15/2003.

¶ 8 We must first determine whether the reasons proffered by Dicken constitute fair and just reasons to withdraw her plea. If so, then we must decide whether the Commonwealth would have been substantially prejudiced if Dicken were permitted to withdraw her plea and force the parties to go to trial. In *Robinson, supra*, the court had challenged and selected a jury (however, they had not yet been sworn) to hear the defendant's weapon's offense case when on that same day the defendant moved to withdraw her guilty plea. Our Court refused to withdraw the defendant's plea, quoting the trial court that "it appeared that [the defendant's] reason for her desire to withdraw her guilty plea was not any feeling of innocence but rather her disappointment that the recommended sentence by the Chief Parole and Probation Officer was greater than she had expected." *Id.* at 791.

¶ 9 Here, unlike the defendant in *Robinson*, Dicken professed her innocence. *See* Petition to Withdraw, 8/27/2004 at 1; N.T., Guilty Plea Withdraw Hearing, 8/31/2004 at 16. She requested withdrawal of her plea well before sentencing and argued that counsel coerced her into entering her plea. In an order of court dated September 10, 2004, the trial court explained its reasons for denying Dickens' withdrawal request:

1. The Defendant entered a guilty plea after the commencement of her trial and after the jury was selected and sworn, but before any testimony was presented.

2. At the time Defendant entered her plea, the Commonwealth had several witnesses from Arizona, New York and Ohio, as well as Pennsylvania. The testimony from the witness from the state of Arizona would have provided documentary proof to dispute the Defendant's proposed defense that she did not have knowledge of how to manufacture the controlled substance in question.

3. Because of the entry of her plea, the standby witnesses were released, and if this case were to go to trial, such witnesses would have to be relocated or replaced, if not presently available, at considerable expense to the Commonwealth.

4. At the time Defendant entered her guilty plea, a thorough Guilty Plea Colloquy occurred which established that her plea was knowingly and voluntarily entered.

\* \* \*

7. The Court finds that the Commonwealth would be substantially prejudiced if Defendant is allowed to withdraw her plea. Defendant would have an unfair advantage since by waiting until after the jury was selected and sworn to plead guilty, she obtained a preview of the Commonwealth evidence and can now adjust her trial strategy. Also, her actions, if allowed to succeed, might be a means of obtaining an entirely new jury for a defendant who feels that the jury originally selected is not favorable [sic] disposed to her cause, even though there exits no grounds for a mistrial. *Commonwealth v. Waylan [Whelan]*, 481 Pa. 418, 392 A.2d 1362 (1978).

8. The Commonwealth is further prejudiced because it would have to relocate or potentially replace witnesses who were previously available and on standby for Defendant's first trial and are located in Arizona, New York, Ohio and Pennsylvania, and

where it is uncertain if all of the same testimony remains available. Order, 9/10/2004 at 1–2.

¶ 10 At Dicken's guilty plea hearing, the Commonwealth testified that it would incur great costs in proceeding with this type of trial where witnesses from other state agencies would have to be flown in from all over the country to testify regarding their records as to Dicken's past methamphetamine experience, where a chemist from New York would have to come to testify regarding the testing of the confiscated substances, as well as drug enforcement agents from other states regarding out-of-state charges she faced in their jurisdictions. The Commonwealth also claimed that it would need to fly in its technical services and aviation units that took aerial pictures of the crime scene/drug lab.

¶ 11 The defense argued at the withdrawal hearing that the Commonwealth had all of its alleged witnesses (experts, agents, etc.) on standby; none of them had actually been transported to trial. Accordingly, the Commonwealth had not incurred any expenses to bring these witnesses to trial. Moreover, the Commonwealth was unable to state whether any of the out-of-state witnesses, save for the aviation and technical experts, were unavailable to come to trial.

*Conclusion*

¶ 12 While we agree that pre-sentence withdrawal requests are often liberally allowed, here Dicken was informed up front that if she were to try to withdraw her plea it would be an extremely difficult standard to meet. Dicken expressed that she was unhappy with the fact that because of her age she could not qualify for boot camp, something she thought she would be eligible for according to the early advice of her attorney at the time she entered her plea and which would reduce the time she served from 3 to 1½ years. *See* N.T. Guilty Plea Withdrawal Hearing, 8/31/2004 at 17–19, 28–29. Being advised that you are eligible for boot camp, when if fact you are not, may be a fair and just reason for withdrawal of a plea. *See Commonwealth v. Hickman,* 799 A.2d 136 (Pa.Super.2002) (plea counsel's erroneous advice about boot camp eligibility under negotiated sentence invalidated Appellant's guilty plea). However, when we weigh that fact against the prejudice the Commonwealth would suffer in the present case if her plea were withdrawn, we agree with the trial court's denial of Dicken's request to withdraw her plea.

¶ 13 Specifically, the fact that this case involved a number of out-of-state witnesses who were ready to appear and testify against Dicken and to contradict her defense that she did not set up the meth lab, and the fact that Dicken was given a preview of the case the Commonwealth would be putting on, tips the scale against permitting her to withdraw her plea. Dicken was given a favorable sentence compared to what she could have received had she been convicted of all charges at trial. As the Commonwealth points out, the latter plea offer it made to Dicken (the one she now is trying to withdraw) had a lower minimum (3–15 years) than the one it had originally offered to her in July of 2003 (4½–10). Dicken entered her guilty plea at a lesser sentence than what was originally offered to her due to her cooperation and voluntary offering of information to officers. At the time she entered her plea, the recommendation was three as opposed to a potential fifteen years. Had a jury convicted her of all charges, she could have faced a maximum of 63 years in jail and over $337,500 in fines.

¶ 14 In such a case, it is not fair to allow a defendant to continually waffle back-and-forth regarding whether to proceed to trial

or take a plea when the Commonwealth has prepared its case, is ready to proceed and has numerous witnesses on standby for trial. Therefore, we will not disturb the trial court's decision to deny Dicken's motion to withdraw.

¶ 15 Judgment of sentence affirmed.