J-A21034-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JAMES VINSON, | |
| Appellee | No. 1599 EDA 2013 |

Appeal from the Order March 5, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0004324-2009

BEFORE:  BOWES, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED AUGUST 27, 2014**

The Commonwealth of Pennsylvania (the Commonwealth) appeals the order entered March 5, 2013, which permitted James Vinson (Vinson) to withdraw his guilty plea to the crimes of sexual assault and unlawful restraint.[1] We affirm.

Vinson was charged with the aforementioned offenses, and a variety of others, after he was accused of forcing himself on a woman (the Complainant) in the basement of his home on March 26, 2009. Vinson waived his preliminary hearing, and a jury trial was scheduled to begin on January 24, 2011. However, Vinson entered into a plea agreement with the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3124.1 and 2902(a), respectively.

Commonwealth immediately before a jury was selected. The trial court accepted Vinson's guilty plea.

Prior to sentencing, on May 11, 2011, Vinson filed *pro se* a motion to withdraw his plea. In his motion, Vinson asserted his innocence and claimed that his guilty plea "was the product of his deteriorated physical and mental condition." Motion to Withdraw Guilty Plea, 5/11/2011, at 1-3 (unnumbered pages). A hearing was held December 27, 2012. At the hearing, Vinson again claimed that he was innocent of the relevant crimes. N.T., 12/27/2012, at 19. Vinson complained about his plea counsel and alleged that the incident "was all about the drugs for sexual favor." *Id.* at 3-18, 20. In response, Assistant District Attorney Matthew Quigg argued that the Commonwealth would be substantially prejudiced if Vinson were allowed to withdraw his plea. ADA Quigg provided the following explanation.

> As of today, I don't know where the [Complainant] is in this case. I have not had contact with her. The number that I had for her I called and it is no longer good. I spoke with a few relatives of the [Complainant's], and the number that was good a month prior, was no longer good as of last week when I called that telephone number.
>
> As such I would respectfully request the court -- and I want to give Mr. Vinson every benefit that he is entitled to, and every right and privilege that he is entitled to under the law. And as such I would request that we just postpone this matter 30 days to see if someone from the County Detectives can track the [Complainant] down.
>
> I feel confident in that 30-day period we would be able to do so. If we are able to do so then the Commonwealth would have no legal basis to oppose his motion to withdraw his guilty plea.

*Id.* at 34-35.

The trial court granted ADA Quigg's request and entered an order providing the Commonwealth with an additional 30 days to find the Complainant. The court scheduled a new hearing for January 28, 2013. On January 30, 2013, the trial court entered an order indicating that the Commonwealth had "requested an additional one to two weeks in order to attempt to locate the [C]omplainant," and scheduled another hearing for February 11, 2013.[2]

During this hearing, the Commonwealth presented the testimony of Detective Michael Shade. Detective Shade testified that he had been attempting to locate the Complainant since January 2, 2013. N.T., 2/11/2013, at 4. Detective Shade indicated that the Complainant's cell phone was out of service, but that he had been in touch with the Complainant's family. *Id.* at 4-5. The Complainant's sister-in-law informed Detective Shade that the Complainant moved to Florida in 2012. *Id.* at 5. Since that time, contact between the Complainant and her family had been

_____

[2] The trial court indicates in its opinion that, on the day scheduled for the hearing, the Commonwealth instead "requested that a conference occur. At the January 28, 2013 conference, ADA Quigg disclosed to the [trial court] and Defense Counsel that the Commonwealth was having trouble locating Complainant, but that a bench warrant had been issued for her on an unrelated matter on December 20, 2012." Trial Court Opinion, 11/21/2013, at 5.

"very brief and sporadic." *Id.* The Complainant had "occasional" contact with her family on the social networking website Facebook. *Id.*

Detective Shade further explained that he conducted a search for the Complainant with the assistance of the Pennsylvania Criminal Intelligence Center. *Id.* As a result, Detective Shade received a report indicating that the Complainant had an address in Delray Beach, Florida. *Id.* at 6. Detective Shade contacted a police department in Florida. *Id.* On January 9, 2013, Detective Shade received an e-mail from a member of the department stating that the Complainant had been located "at the Homing Inn on Federal Highway in Boynton Beach, Florida, living with a subject named Ben." *Id.* at 7. A Florida police officer left information with "Ben," requesting that the Complainant call Detective Shade. *Id.* Detective Shade received no response from the Complainant. *Id.*

On January 16, 2013, Detective Shade received a phone call from another Florida police officer, who informed him that the Complainant "was now staying at the Gold Sands Motel in Woolbright, Florida." *Id.* The officer gave the Complainant Detective Shade's contact information and requested that she give him a call. *Id.* She did not do so. *Id.* at 7-8. Detective Shade also received a new cell phone number for the Complainant, but was unable

to reach the Complainant using that number.[3] *Id.* Detective Shade again requested that the Florida police department attempt to track down the Complainant. *Id.* at 9. However, as of the time of the hearing, the Complainant had not been found. *Id.*

Despite these difficulties, Detective Shade testified that he was confident that the Complainant would one day be located. *Id.* at 14. The trial court asked Detective Shade if there was a way that the Complainant could be forced to return to Pennsylvania, and Detective Shade indicated "[w]e could subpoena a warrant down to Florida, is my understanding." *Id.* at 15.[4]

_____

[3] Detective Shade did relate an incident in which an unidentified woman answered the phone, but she denied being the Complainant and claimed that the detective had the wrong number. N.T., 2/11/2013, at 8-9.

[4] We note with disapproval that Vinson was at times left to fend for himself during the underlying proceedings, despite being represented by counsel. For example, at the February 11, 2013 hearing, the trial court instructed Vinson that "you're represented by counsel, but you filed this motion pro se. You need to have a discussion with your counsel as to what cross-examination, if any, you want." N.T., 2/11/2013, at 10. Vinson was then made to cross-examine Detective Shade himself, while his plea counsel watched. Vinson expressed his belief that his plea counsel was supposed to be acting as his advocate, and explained that he had not come prepared to represent himself. *Id.* at 11-13 ("I thought he was going to be my mouthpiece, but I found out that pro se meant it's in my hands.").

It is well-settled that "the disapproval of hybrid representation is effective at all levels." *Commonwealth v. Cooper*, 27 A.3d 994, 1000 n.9 (Pa. 2011). Vinson's plea counsel never withdrew his appearance on behalf of Vinson, nor was a hearing held to establish that Vinson wanted to proceed *pro se* with standby counsel. *See* Pa.R.Crim.P. 120(A)(4) ("An attorney who has been retained or appointed by the court shall continue such

(Footnote Continued Next Page)

On March 5, 2013, the trial court entered a Memorandum Opinion and Order which granted Vinson's motion to withdraw his guilty plea and scheduled trial for April 3, 2013. On March 26, 2013, the Commonwealth sent the trial court an *ex parte* letter requesting another continuance. The following day, the trial court entered orders continuing Vinson's trial indefinitely and scheduling a conference for March 28, 2013.

On April 3, 2013, the Commonwealth filed an "Application to Amend Order to Include Statement Specified in 42 Pa.C.S. § 702(b)." In its Application, the Commonwealth requested that the trial court amend its order of March 5, 2013 so as to permit the Commonwealth to file a petition for permission to appeal with this Court.[5] The trial court denied the Application on April 4, 2013.

On April 15, 2013, the Commonwealth filed with this Court a "Petition for Review From the Trial Court's Refusal to Amend its Order to Include the

(Footnote Continued) _____

representation through direct appeal or until granted leave to withdraw by the court[.]"); Pa.R.Crim.P. 121 (discussing waiver of counsel and appointment of standby counsel). Thus, the trial court was not permitted to force *pro se* status on Vinson.

[5] 42 Pa.C.S. § 702(b) provides that when a trial court is of the opinion that an interlocutory order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order." A party may then seek permission to appeal the interlocutory order. Pa.R.A.P. 1311(b). In the event a party petitions a trial court to include the relevant language in an interlocutory order, and the trial court refuses, the party may petition this Court to review the trial court's decision. Pa.R.A.P. 1311 (Official Note).

Language Prescribed by 42 Pa.C.S. § 702(B), Pursuant to Pa.R.A.P. 1311 (Official Note) and Pa.R.A.P. 1513." In its Petition, the Commonwealth argued that the trial court erred by refusing to amend its order of March 5, 2013. On June 11, 2013, this Court issued a *per curiam* order granting the Commonwealth's petition.[6] The trial court then ordered the Commonwealth to file a concise statement of errors complained of appeal pursuant to Pa.R.A.P. 1925, and the Commonwealth timely complied.

The Commonwealth now raises the following issue on appeal: "Whether the lower court abused its discretion by allowing defendant to withdraw his guilty plea to sex crimes, where the [Complainant] moved out-of-state after the plea and is no longer available to testify at trial?" Commonwealth's Brief at 4. We consider this issue mindful of the following principles.

> A pre-sentence motion to withdraw a guilty plea should be liberally allowed and should be granted for any fair and just reason unless granting the motion would cause substantial prejudice to the Commonwealth. An assertion of innocence can constitute a fair and just reason for plea withdrawal. In the context of a pre-sentence request for plea withdrawal, the term "prejudice" means that, due to events occurring after the entry of the plea, the Commonwealth's prosecution of its case is in a worse position tha[n] it would have been had the trial taken place as originally scheduled. Thus, prejudice is about the Commonwealth's ability to try its case, not about the personal

_____

[6] The Commonwealth also requested that this Court "reverse the order of the trial court." In our *per curiam* order, we denied that request "without prejudice to the Commonwealth's right to again raise the request before the merits panel." Order, 6/11/2013.

inconvenience to complainants unless that inconvenience somehow impairs the Commonwealth's prosecution.

The decision to grant or deny a motion to withdraw a guilty plea rests within the trial court's discretion, and we will not disturb the court's decision on such motion unless the court abused that discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, and/or misapplication of law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

***Commonwealth v. Gordy***, 73 A.3d 620, 623-24 (Pa. Super. 2013), *appeal denied*, 87 A.3d 318 (Pa. 2014) (citations omitted).

Instantly, the Commonwealth appears to concede that Vinson has asserted his innocence, and that he therefore has produced a "fair and just reason" to permit the withdrawal of his plea. However, the Commonwealth argues it that has been "substantially prejudiced" as a result. Commonwealth's Brief at 13. The Commonwealth emphasizes that it is "in a worse position now at the time of the withdrawal in 2013 than at the time of the guilty plea in 2011," because of the added difficulty and expense of producing the Complainant to testify. ***Id.*** at 13-15. The Commonwealth contends that a trial would subject the Complainant to additional trauma and distress, and that the trial court's order creates "the very real danger that a sexually violent predator will escape justice because he was allowed to withdraw his plea." ***Id.*** at 15.

In its opinion, the trial court concludes that the Commonwealth was not substantially prejudiced because "the Commonwealth knew where

- 8 -

Complainant was located at various times," but made a "tactical decision" not to have her returned to Pennsylvania by issuing a subpoena or by "proceed[ing] under the material witness procedure." Trial Court Opinion, 11/21/2013, at 14, 21.[7,8] The court states that "[t]he Commonwealth has not demonstrated a great expense to bring Complainant back to Pennsylvania," and that "[t]here is no evidence that [Vinson] is attempting to play fast and loose with the guilty plea process" because the Complainant

_____

[7] The "material witness procedure" referenced by the trial court is described in our Rules of Criminal Procedure as follows.

> After an accused has been arrested for any offense, upon application of the attorney for the Commonwealth or defense counsel, and subject to the provisions of this chapter, a court may set bail for any material witness named in the application. The application shall be supported by an affidavit setting forth adequate cause for the court to conclude that the witness will fail to appear when required if not held in custody or released on bail. Upon receipt of the application, the court may issue process to bring any named witnesses before it for the purpose of demanding bail.

Pa.R.Crim.P. 522(A).

[8] The trial court also asserts that the Commonwealth could bring the Complainant to Pennsylvania by "enforc[ing] the outstanding bench warrant" against her. Trial Court Opinion, 11/21/2013, at 21. We note that there is nothing in the certified record confirming that a bench warrant was issued against the Complainant. While the trial court attached several exhibits to its opinion indicating that such a warrant was issued, "a fact cannot become of record by virtue of its inclusion in the trial court opinion." **Hatalowich v. Bednarski**, 461 A.2d 1292, 1294 (Pa. Super. 1983). Moreover, "a court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court." **Woolard v. Burton**, 498 A.2d 445, 448 (Pa. Super. 1985) (quoting **Naffah v. City Deposit Bank et al.,** 13 A.2d 63, 64 (Pa. 1940)).

still was residing in Pennsylvania at the time Vinson first sought to withdraw his plea. *Id.* at 19-20 (quotation marks omitted).

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by permitting Vinson to withdraw his guilty plea. While the unavailability of a critical witness is an important factor in assessing substantial prejudice,[9] the record here demonstrates that the Commonwealth has consistently been able to locate the Complainant in Florida. In a period of about one month, Detective Shade located the Complainant twice: once when she was living "at the Homing Inn on Federal Highway in Boynton Beach," and again when she was living at "the Gold Sands Motel in Woolbright." N.T., 2/11/2013, at 7. Despite being able to find the Complainant, the Commonwealth has not taken the steps necessary to insure her presence at trial. As the trial court explained, the Commonwealth may issue a subpoena or seek to have the Complainant detained as a material witness pursuant to Pa.R.Crim.P. 522.

Thus, despite its protestations to the contrary, the Commonwealth has failed to establish that it is in a "worse position tha[n] it would have been

_____

[9] *See Gordy*, 73 A.3d at 628 (finding no substantial prejudice where, *inter alia*, there was no evidence that the Commonwealth "cannot locate, secure the attendance of, or obtain cooperation from the complainants"); *Commonwealth v. Kirsch*, 930 A.2d 1282, 1287 (Pa. Super. 2007), *appeal denied*, 945 A.2d 168 (Pa. 2008) (finding no substantial prejudice because, *inter alia*, "[t]his is not a situation where in the interim a witness has died or left the jurisdiction, or where key evidence has been inadvertently lost or destroyed").

had the trial taken place as originally scheduled." *Gordy*, 73 A.3d at 624. The Commonwealth remains fully capable of prosecuting Vinson, so long as it exercises reasonable diligence to secure the Complainant for trial.

Additionally, we agree with the trial court that the Commonwealth has failed to demonstrate that any significant expense would be incurred by bringing the Complainant back to Pennsylvania, and that the timing of Vinson's motion tends to demonstrate that he is not attempting to abuse the guilty plea process.[10] Vinson filed the motion to withdraw his guilty plea at least seven months before Complainant left the jurisdiction, and it does not appear that Vinson was attempting to withdraw his plea in hopes that the Complainant would become unavailable. *Cf. Commonwealth v. Cole*, 564 A.2d 203, 205-06 (Pa. Super. 1989) (affirming denial of pre-sentence motion to withdraw guilty plea where "the Commonwealth argued that appellant had waited to enter a plea of guilty until it had become clear that the complaining witness, Ms. Dooley, had appeared to testify against him and that appellant only sought to withdraw his plea after Ms. Dooley had returned to Georgia.").[11]

_____

[10] As observed by the trial court, Trial Court Opinion, 11/21/2013, at 20, ADA Quigg indicated at the hearing of February 11, 2013, that he was "not arguing the Commonwealth would be substantially prejudiced" by the expense of transporting a single witness to Pennsylvania. N.T., 2/11/2013, at 21-22.

[11] The other cases cited by the Commonwealth where defendants have been prevented from withdrawing their pleas are readily distinguishable from the
(Footnote Continued Next Page)

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2014

(Footnote Continued) ——————————

instant matter. **See Commonwealth v. Ross**, 447 A.2d 943 (Pa. 1982) (affirming denial of pre-sentence motion to withdraw guilty plea "which had been made after the dismissal of **numerous key Commonwealth witnesses** in reliance on the plea") (emphasis added); **Commonwealth v. Dicken**, 895 A.2d 50, 54 (Pa. Super. 2006), *appeal denied*, 907 A.2d 1101 (Pa. 2006) (affirming denial of pre-sentence motion to withdraw guilty plea where "the Commonwealth testified that … **witnesses from other state agencies would have to be flown in from all over the country** to testify") (emphasis added); **Commonwealth v. Carelli**, 454 A.2d 1020, 1023 n.9 (Pa. Super. 1982) (affirming denial of pre-sentence motion to withdraw guilty plea where "**many Commonwealth witnesses** who had been victimized by the appellants were present for trial and had travelled great distances") (emphasis added); **Commonwealth v. Miller**, 639 A.2d 815, 819 (Pa. Super. 1994) (affirming denial of pre-sentence motion to withdraw guilty plea where "the Commonwealth would again be required to find another county in which appellant could be tried by a jury unaffected by the extensive publicity which had followed his several crimes," resulting in "great financial burden" and "substantial delay"); **Commonwealth v. Ammon**, 418 A.2d 744, 748 (Pa. Super. 1980) (affirming denial of pre-sentence motion to withdraw *nolo contendere* plea entered midway through trial after the minor victim testified at length about sexual abuse perpetrated by Ammon); **Commonwealth v. Mosley**, 423 A.2d 427, 429 (Pa. Super., 1980) (reversing grant of pre-sentence motion to withdraw guilty plea where "the Commonwealth presented uncontroverted psychiatric testimony that [the victim] may commit suicide under pressure of having to testify at any trial required by defendant's plea withdrawal").