J-S14043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC CORRELL ADCOX | : | |
| | : | |
| Appellant | : | No. 1022 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 8, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003895-2020

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:  **FILED: JUNE 17, 2024**

Eric Correll Adcox (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count of persons not to possess firearms.[1]  We affirm.

The trial court summarized the facts underlying this appeal:

> In January of 2020, the Harrisburg Bureau of Police were engaged in a drug investigation of [Appellant].  A confidential informant had made a purchase of a controlled substance from 1716 Miller Street in the City of Harrisburg, and informed police that cocaine could be purchased from "Eric."  On January 23, 2020, a search warrant was obtained to search that residence, at which [Appellant] was currently residing.
>
> The search was conducted on January 24, 2020, at approximately 6:00 a.m.  Officers accessed the residence through the front door[,] … where they discovered [Appellant] on a couch.  Also present in the house, in the upstairs front bedroom, was [Appellant]'s girlfriend, Aveya McNealy.

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

In the dining room, which was adjacent to the living room where [Appellant] was located, were two (2) boxes of 9mm Remington ammunition. A box of 9mm Federal ammunition was also found on the coffee table in the living room. A search of [Appellant]'s person revealed over $700 in cash. After being read his *Miranda* warnings, [*see Miranda v. Arizona*, 384 U.S. 436 (1966), Appellant] told police there was marijuana in [a] black backpack and cocaine in a first aid kit. Police located approximately a half pound of marijuana and a quarter to a half ounce of cocaine in those locations.

[Appellant] also told the officers there was a firearm in an upstairs bedroom. In the upstairs front bedroom, on the windowsill, police discovered a Taurus 9mm handgun. The firearm had twelve (12) rounds loaded in the magazine[,] but none in the chamber. The bedroom where the firearm was discovered, [and] where McNealy was found, was [Appellant]'s bedroom. The house was [Appellant]'s residence and McNealy only stayed with him "every now and then."

Consistent with the house belonging to [Appellant], the police found mail addressed to [Appellant], at his prior address at 266 Woodbine Street, in the room with the firearm. They also discovered a safe that [Appellant] acknowledged belonged to him. Inside that safe, which had to be broken into because the battery lock no longer worked and the key was lost, was a gun case, two boxes of 9mm Winchester ammunition, and a Taurus 9mm magazine. [Appellant] also kept personal items in the safe such as his social security card and other important documents.

[Appellant] explained to police that the previous day, January 23, 2020, he had gone to Washington, D.C.[,] with a friend. He returned home at approximately 3:00 a.m. and immediately laid down on the couch in the living room. He never even went upstairs. [Appellant] also stated that he had not possessed the gun that day or taken it with him to Washington, D.C.

Additional police investigation revealed that McNealy had purchased the gun and was the registered owner. A search of [Appellant]'s social media accounts yielded two (2) music videos on his Facebook page. Although it could not be determined when the videos were created, they depicted [Appellant] in possession

of what appeared to be a firearm. [Appellant] claimed that what he was depicted as possessing in the music videos was only a prop gun and not a real firearm. However, examination of the 9mm Taurus found during execution of the search warrant and the video images revealed unique similarities.

On February 16, 2010, [Appellant] was convicted of Possession with Intent to Deliver a Controlled Substance [(PWID)], [**see** 35 P.S. § 780-113(a)(30)]. Therefore, on January 24, 2020, [Appellant] was a person legally prohibited from possessing a firearm in the Commonwealth of Pennsylvania[, **see** 18 Pa.C.S.A. § 6105(c)(2)].

Trial Court Opinion, 8/30/23, at 5-7 (footnotes and record citations omitted).

On November 10, 2020, the Commonwealth charged Appellant with two counts of possession with the intent to deliver a controlled substance,[2] in addition to the above-described firearm offense. Appellant requested (and the trial court granted) severance of the firearm charge, which proceeded to a jury trial on January 28, 2022. On February 1, 2022, the jury convicted Appellant. On March 4, 2022, while the severed drug offenses were still pending, the trial court sentenced Appellant to 4½ to 10 years in prison. Appellant filed a timely post-sentence motion, which the trial court denied on March 16, 2022.

On April 8, 2022, the trial court *sua sponte* vacated the orders imposing sentence and denying post-sentence relief. The court indicated "the matter was not yet ripe for consideration of any post-sentence claims until all

_____

[2] 35 P.S. § 780-113(a)(30).

charges" on the criminal information were resolved. *Id.* at 1; *see also* Order, 4/8/22. On June 24, 2022, the trial court granted Appellant's request to represent himself. Thereafter, Appellant filed a litany of motions in the trial court, as well as a petition for permission to appeal in the Commonwealth Court.[3]

On June 8, 2023, the Commonwealth withdrew the remaining drug offenses charged in Appellant's criminal information. The trial court proceeded to sentencing on Appellant's firearms conviction that same day, re-imposing its prior sentence of 4½ to 10 years in prison. On June 26, 2023, Appellant timely filed a *pro se* post-sentence motion,[4] arguing, *inter alia*, that the verdict was against the weight of the evidence. *See* Post-Sentence Motion, 6/26/23,

---

[3] The substance and disposition of these matters are not germane to the instant appeal.

[4] Post-sentence motions must be filed no later than ten days following imposition of sentence. *See* Pa.R.Crim.P. 720(A)(1). However, at the time of filing, Appellant was an inmate at the Dauphin County Prison. In correspondence to the trial court, Appellant represented he deposited his filing in the prison mail system on June 16, 2023, within the ten-day time limit. *See* Correspondence, 6/26/23, at 1 (unpaginated). In a June 30, 2023, order, the trial court specifically found that Appellant's motion was timely pursuant to the prisoner mailbox rule. *See* Order, 6/30/23; *see also Commonwealth v. Crawford*, 17 A.3d 1279, 1281 (Pa. Super. 2011) ("Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing."). As the Commonwealth does not contest the timeliness of Appellant's filing, *see* Commonwealth Brief at 4-7, we deem Appellant's post-sentence motion timely. *See Commonwealth v. Cooper*, 710 A.2d 76, 79 (Pa. Super. 1998) ("Where … the opposing party does not challenge the timeliness of the [filing] and the prisoner's assertion of timeliness is plausible, we may find the [filing] timely without remand.").

at 1-2 (unpaginated). Appellant also requested appointment of counsel (appellate counsel), which the trial court granted. The court authorized appellate counsel to file a supplemental post-sentence motion within 30 days.

Prior to the expiration of the 30-day period, Appellant filed a *pro se* notice of appeal.[5] Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant, represented by appellate counsel, raises the following issues on appeal:

> A. Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient evidence [] Appellant had intention to exercise control over the firearm[?]
>
> B. Whether the trial court erred in accepting the jury's verdict which was contrary to the evidence presented at trial which established McNealy possessed and owned the firearm[?]

Appellant's Brief at 4 (capitalization modified).

Before we consider the merits of Appellant's claims, we address whether this appeal is properly before us. On November 2, 2023, this Court issued a rule to show cause why the appeal should not be quashed as interlocutory, as

---

[5] Generally, "no defendant has a constitutional right to hybrid representation, either at trial or on appeal." ***Commonwealth v. Staton***, 184 A.3d 949, 957 (Pa. 2020) (citation omitted). Nevertheless, "when a counseled defendant files a *pro se* notice of appeal, the appeal is not a legal nullity[,] and has legal effect." ***Commonwealth v. Hopkins***, 228 A.3d 577, 580-81 (Pa. Super. 2020) (citation omitted); ***see also Commonwealth v. Williams***, 151 A.3d 621, 624 (Pa. Super. 2016) ("Because a notice of appeal protects a constitutional right, it is distinguishable from other filings that require counsel to provide legal knowledge and strategy in creating a motion, petition, or brief.").

Appellant's post-sentence motion was still pending in the trial court. On November 16, 2023, appellate counsel filed a motion in the trial court requesting entry of an order denying Appellant's *pro se* post-sentence motion by operation of law.[6] **See** Motion to Deny Post-Sentence Motion by Operation of Law, 11/16/23, at 2 (unpaginated); **see also** Pa.R.Crim.P. 720(B)(3)(a) ("If the judge fails to decide the [post-sentence] motion within 120 days, … the motion shall be deemed denied by operation of law."). On November 17, 2023, the trial court granted Appellant's request, and entered an order deeming Appellant's post-sentence motion denied by operation of law. **See** Order, 11/17/23.

Although Appellant's notice of appeal was premature, in similar cases we have considered a premature appeal when "the subsequent actions [of the lower] court fully ripened it." **Commonwealth v. Cooper**, 27 A.3d 994, 1004 (Pa. 2011); **see also Commonwealth v. Hamaker**, 541 A.2d 1141, 1143 (Pa. Super. 1988) (considering a premature appeal of post-trial motions); Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as

_____

[6] The Dauphin County Clerk of Courts failed to enter an order deeming Appellant's motion denied at the expiration of the 120-day time period for deciding post-sentence motions (instantly, October 24, 2023). **See** Pa.R.Crim.P. 720(B)(3)(c) ("When a post-sentence motion is denied by operation of law, the clerk of courts **shall** forthwith enter an order on behalf of the court … that the post-sentence motion is deemed denied." (emphasis added)).

filed after such entry and on the day thereof."). As the trial court entered an order formally denying Appellant's post-sentence motion, the instant appeal is ripe for our review. *See Cooper*, 27 A.3d at 1004. Accordingly, we proceed to address the merits of Appellant's claims.

In his first issue, Appellant argues the evidence adduced at trial was insufficient to support his conviction, because the Commonwealth failed to show that he directly or constructively possessed a firearm. *See* Appellant's Brief at 12. Appellant contends, "[t]he Commonwealth speculates that the firearm belonged to Appellant because he is male and a drug dealer." *Id.* at 14. He argues the Commonwealth's case amounted to nothing more than "speculation and conjecture[,] and certainly not sufficient proof beyond a reasonable doubt." *Id.* at 15.

> Our standard of review for sufficiency claims is well-settled:
>
> Faced with such a challenge, an appellate court should determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to allow the fact finder to conclude that the Commonwealth established the challenged criminal element of the offense beyond a reasonable doubt.

*Commonwealth v. Stevenson*, 283 A.3d 196, 205 n.3 (Pa. 2022). "It is well-established that the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence[.]" *Commonwealth v. Yandamuri*, 159 A.3d 503, 514 (Pa. 2017) (citation omitted). Further, "[t]his Court may not substitute its judgment for that of the factfinder. If the record contains

support for the verdict, it may not be disturbed." ***Commonwealth v. McFarland***, 278 A.3d 369, 381 (Pa. Super. 2022) (quotation omitted).

Our Crimes Code defines persons not to possess firearms, in relevant part, as follows:

> A person … whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1). Subsection (c) provides that any person convicted of an offense under the Controlled Substance, Drug, Device and Cosmetic Act may not possess a firearm. ***See id.*** § 6105(c)(2). Appellant does not dispute that his prior conviction of PWID precluded him from possessing a firearm. ***See*** Appellant's Brief at 12.

The Commonwealth may establish possession of a firearm by proving a defendant's actual possession, constructive possession, or joint constructive possession. ***See Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa. Super. 2018). Concerning constructive possession, we have observed:

> When there is no direct evidence the person was in physical possession of the firearm, the Commonwealth must prove the element of possession through what has been described as the "legal fiction" of constructive possession. ***See … Parrish***, 191 A.3d [at] 36 …. This Court has stated that a defendant has constructive possession of contraband if he has conscious dominion of it, that is, he has the "power to control the contraband and the intent to exercise that control." ***Id.*** (citation omitted). Constructive possession is "an inference arising from a set of facts that possession of the contraband was more likely than not[,]" ***see Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013)(citation omitted) and may be established by the totality of the circumstances, ***see Parrish***, 191 A.3d at 36.

- 8 -

***Commonwealth v. McIntyre***, ___ A.3d ___, 2024 PA Super 58, **23-24

(Pa. Super. filed Mar. 25, 2024).

Here, the trial court concluded "there is ample circumstantial evidence demonstrating that [Appellant] was at least a joint possessor of the firearm, and the evidence presented at trial was not insufficient to support the verdict." Trial Court Opinion, 8/30/23, at 10-11.  In support of its conclusion, the trial court listed several relevant facts elicited at trial:

> 1.    A confidential informant obtained drugs from [Appellant]'s residence and told police they could purchase cocaine from "Eric." N.T., 1/31/22, at 102-03.
>
> 2.    [Appellant] admitted that he possessed the marijuana and cocaine found in his residence.  ***Id.*** at 182-83.
>
> 3.    [Appellant] had over $700 in cash on his person at the time of the search.  ***Id.*** at 114.
>
> 4.    Although neither absolute nor dispositive of the issue, it is common, and not unreasonable to infer, that those engaged in the illegal sale of controlled substances tend to possess firearms, legal or otherwise.  [***Cf. Commonwealth v. Knupp***, 290 A.3d 759, 775 (Pa. Super. 2023) ("On sufficiency review, our appellate courts have considered the presence of a firearm as a relevant factor for consideration of a drug possessor's intent to deliver." (citations omitted)).]
>
> 5.    [Appellant] was the legal occupant of the residence where the firearm was located.  ***Id.*** at 181.
>
> 6.    The firearm was discovered in [Appellant]'s bedroom along with mail addressed to him.  ***Id.*** at 118, 120-21, 181-82.
>
> 7.    Aveya McNealy, … who was in the bedroom with the firearm at the time, did not reside at [Appellant]'s residence and only stayed there "every now and then."  ***Id.*** at 181.

8.      9mm ammunition matching the 9mm firearm found in [Appellant]'s house was discovered in the living room, the dining room, and in the safe of which [Appellant] claimed ownership. *Id.* at 113, 119-20, 125-26.

9.      Also discovered in [Appellant]'s safe were a gun case, a Taurus 9mm magazine matching the firearm in question, and [Appellant]'s social security card and other important documents belonging to [Appellant]. *Id.* at 120, 185.

10.      [Appellant] appeared in music videos possessing an item which appeared [] identical to the Taurus 9mm firearm found in his residence. The distinct characteristics of the firearm were discernible in the video and [the trial court] was convinced that it was the subject firearm. *Id.* at 68, 132, 144. The videos cast doubt on [Appellant]'s testimony that he had never possessed the Taurus legally owned by McNealy. *Id.* at 179.

11.      Although [Appellant] testified that he had just returned home at 3:00 a.m. after being gone for approximately twelve (12) hours, and he had not even gone upstairs since returning, he told police that there was a gun in the upstairs bedroom. *Id.* at 117, 177-78. If the firearm was possessed solely by McNealy[,] and [Appellant] had nothing to do with it, he could not have been so certain where it was at that moment. However, if he routinely exercised dominion and control over that firearm, he would be more likely to know exactly where it was, as he did at 6:00 a.m. on January 24, 2020.

*Id.* at 9-10 (record citations modified).

The record amply supports the reasoning and conclusion of the trial court. When viewed in the light most favorable to the Commonwealth as the verdict winner, *see Stevenson*, 283 A.3d at 205 n.3, we agree the record reveals Appellant constructively possessed a firearm. *See McIntyre*, 2024 PA Super 58, *24 (stating constructive possession "may be established by the totality of the circumstances"). Accordingly, Appellant's first claim lacks merit.

- 10 -

In his second issue, Appellant challenges the verdict as against the weight of the evidence. Specifically, Appellant argues "[t]he weight of the evidence proves McNeal[]y lawfully possessed the firearm[,]"[7] and "[t]he only evidence linking Appellant to the firearm is his presence in the same building[.]" Appellant's Brief at 16. He claims these facts are "so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* at 15 (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000)).

Our standard of review concerning challenges to the weight of the evidence is well settled:

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

> One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a **palpable abuse of**

---

[7] Both McNealy and Appellant testified that McNealy was the owner of the firearm, and that Appellant never possessed the firearm. N.T., 1/31/22, at 157-59, 177-81.

**discretion** will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (internal citations and quotation omitted; emphasis in original). Further, "the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses[.]" *Commonwealth v. James*, 297 A.3d 755, 768 (Pa. Super. 2023) (quotation omitted).

Citing the evidence outlined above, the trial court concluded the jury "found the Commonwealth's evidence credible with respect to the question of possession[,]" and that the jury's verdict did not "shock [the trial court]'s sense of justice." Trial Court Opinion, 8/30/23, at 11. We agree. The Commonwealth presented ample evidence allowing the jury to find Appellant constructively possessed a firearm. *See id.* at 9-10. It was within the sole province of the jury to determine the weight of this evidence, resolve conflicts in the testimony, and assess credibility. *See Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) ("At trial, the jury was the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses.").

Our review confirms the trial court did not abuse its discretion in rejecting Appellant's weight claim. The jury was free to credit the Commonwealth evidence, and to reject Appellant's arguments at trial. *See id.* at 1080. As Appellant has failed to demonstrate the trial court "palpably abused its discretion," his weight claim is without merit. *See Morales*, 91 A.3d at 91.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/17/2024