J-S43037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LISA E. DEVIVO-GANE | : | |
| | : | |
| Appellant | : | No. 1667 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 4, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0006237-2023

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                 **FILED JANUARY 15, 2026**

Appellant, Lisa E. Devivo-Gane, appeals from the aggregate judgment of sentence of 11½ to 23 months' incarceration, followed by 5 years' probation, imposed after she pled guilty to neglect of a care-dependent person (18 Pa.C.S. § 2713(a)(3)) and conspiracy to commit theft by unlawful taking (18 Pa.C.S. § 903(a)(1)). Appellant solely challenges the discretionary aspects of her sentence. We affirm.

The trial court summarized the relevant facts and procedural history of Appellant's case, as follows:

> Louise DeVivo [was, at the time of the court's opinion,] an 86-year-old resident of Montgomery County. During the relevant time frames of this incident, Ms. DeVivo was 84 and 85 years old. During the relevant time frames of this incident, [Ms.] DeVivo had dementia to the point she was mentally incapacitated and could not make decisions for herself. [Ms.] DeVivo's ability to physically care for herself was limited. As of September 15, 2022, Dr. Christopher Reid, a specialist in Neurology at Bryn Mawr Medical

Specialists Association, determined that [Ms.] DeVivo was mentally incapacitated and did not have the capacity to revoke her power of attorney due to her dementia of the Alzheimer's type. At that time, Denise DeVivo Farrer, [Ms.] DeVivo's daughter, had power of attorney for [Ms.] DeVivo. All of the conduct in this case occurred in various townships within Montgomery County, Pennsylvania[,] between July 1, 2022, and April 1, 2023.

On November 14, 2022, Appellant drove [Ms.] DeVivo from her home … in Lower Merion Township to meet with Justin Redcay without the permission of [Ms.] DeVivo Farrer. Between that day and March of 2023, Appellant and Mr. Redcay were residing at various hotels with [Ms.] DeVivo. While residing with [Ms.] DeVivo and Mr. Redcay, Appellant took responsibility for caring for [Ms.] DeVivo along with Mr. Redcay, at the request of Appellant's ex-husband and son of [Ms.] DeVivo, John DeVivo.

While residing with [Ms.] DeVivo, Appellant did not ensure that she was given care, medication or services to treat her dementia or ensure her safety. On at least one occasion, [Ms.] DeVivo left the hotel room and was found wandering confused and alone[,] without Appellant's supervision[,] until law enforcement was called and intervened and returned [Ms.] DeVivo to Appellant and Mr. Redcay.

On one occasion, Appellant took [Ms.] DeVivo to Bryn Mawr Hospital after a reported fall, where Dr. Paige McLaughlin noted that [Ms.] DeVivo was disoriented and had no understanding of her guardianship situation. Appellant did not stay on-scene for that hospitalization and left [Ms.] DeVivo at the hospital.

Between November of 2022 and March 23, 2023, Appellant helped to make certain that [Ms.] DeVivo had little to no contact with her daughter and her true power of attorney, [Ms.] DeVivo Farrer. During this time, Mr. Redcay took money from [Ms.] DeVivo's bank accounts to use for his own personal gain and Appellant participated in at least one of these thefts and received proceeds from his illegal activity. On at least one occasion, specifically on January 11, 2023, Appellant aided Mr. Redcay by pretending to be [Ms.] DeVivo on a recorded phone call with one of her banks, Fidelity Bank, to authorize transactions by Mr. Redcay on her accounts.

Through Appellant's agreement to help Mr. Redcay take [Ms.] DeVivo's money, Appellant received a 2015 Nissan Rogue, which was valued at twenty-one thousand one hundred and fifty-seven

dollars and forty-six ($21,157.46) cents. Appellant and Mr. Redcay paid for the hotels they stayed in with [Ms.] DeVivo, which cost two hundred and twenty-six ($226.00) dollars per night for two (2) months[,] using [Ms.] DeVivo's bank accounts. Appellant also received an apartment located … in[ K]ing of Prussia, Montgomery County[,] that was paid for in part with approximately twelve thousand ($12,000.00) dollars in funds unlawfully taken from [Ms.] DeVivo's accounts. Appellant's apartment, along with a neighboring one for Mr. Redcay, was furnished with all new furniture purchased using thirty thousand one hundred fifty-two dollars and thirty ($30,152.30) cents … unlawfully taken from [Ms.] DeVivo's accounts. Appellant also received Cash App payments from Mr. Redcay.

On October 25, 2023, Magisterial District Judge, Karen Eisner, presided over Appellant's preliminary hearing, with Appellant represented by her attorney, Rachel Blevins, Esquire. Judge Eisner held all charges for court. On August 27, 2024, Appellant entered into an open guilty plea, as set forth above. On December 4, [2024,] a sentencing hearing was held[, at] … which the court imposed an aggregate sentence of incarceration of eleven and one-half (11½) to twenty-three (23) months….

On December 12, 2024, Appellant filed a timely post-sentence motion. On May 23, 2025, Appellant filed a praecipe for entry of [an] order denying [her] post[-]sentence motion. On May 29, 2025, this court circulated an order denying Appellant's post-sentence motion.[1]

On June 27, 2025, Appellant filed a timely notice of appeal.[2]

_____

[1] We note that the court's order did not actually deny Appellant's post-sentence motion but, instead, it directed the clerk of courts to issue an order denying her motion by operation of law pursuant to Pa.R.Crim.P. 720(B)(3) (stating that a trial court has 120 days to decide a post-sentence motion, and if it fails to do so, the clerk of courts shall enter an order on behalf of the trial court stating that the motion is deemed denied by operation of law). However, the clerk of courts did not enter that order, which we discuss in further detail, *infra*.

[2] After Appellant filed her notice of appeal, this Court discerned that no order had been entered denying her post-sentence motion by operation of law. This Court has held that a court breakdown occurs when the trial court clerk fails

*(Footnote Continued Next Page)*

Trial Court Opinion (TCO), 7/21/25, at 3-5 (unnecessary capitalization and citations to the record omitted).

Appellant and the trial court thereafter complied with Rule 1925. Herein, Appellant states one issue for our review:

> Whether Appellant's sentencing hearing did not follow the Sentencing Code[ or] sentencing norms[,] and whether the sentence was manifestly unreasonable and excessive where the [t]rial [c]ourt failed to adequately consider … Appellant's advanced age, lack of prior convictions, [post traumatic stress disorder (PTSD)] from an abusive relationship with her ex-husband, minor role in the offense[,] and post-arrest rehabilitation.

Appellant's Brief at 4.

Appellant's issue challenges the discretionary aspects of her sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging

---

to enter an order deeming post-sentence motions denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3). *See Commonwealth v. Patterson*, 940 A.2d 493, 498-99 (Pa. Super. 2007) (citing *Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003)). Accordingly, on August 20, 2025, this Court entered a *per curiam* order directing the clerk of courts "to enter an [o]rder denying Appellant's December 12, 2024 post-sentence motion by operation of law on April 11, 2025[,]" which was the date on which the 120-day period for a decision on her post-sentence motion had expired. Order, 8/20/25, at 1 (single page). Following the entry of our order, the clerk of courts issued an order deeming Appellant's post-sentence motion denied by operation of law, but it dated that order September 4, 2025. Nevertheless, we may consider Appellant's June 27, 2025 notice of appeal as timely, even though it pre-dated the order denying her post-sentence motion, because "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the date thereof." *See Commonwealth v. Cooper*, 27 A.3d 994, 1008 (Pa. 2011) (citation omitted).

the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations and quotation marks omitted).

In this case, Appellant contends that the court imposed a manifestly excessive sentence by failing to consider certain mitigating factors, namely, her "advanced age, lack of prior convictions, PTSD from an abusive relationship with her ex-husband, minor role in the offense[,] and post-arrest rehabilitation." Appellant's Brief at 14-15.

Initially, Appellant's argument is waived. In her post-sentence motion, Appellant stated:

> This sentence must be reconsidered as the [c]ourt did not equally take into consideration "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."

42 [Pa.C.S.] § 9721[(b)]….  The [c]ourt in this matter focused more on the facts of the case than anything else.

Post-Sentence Motion, 12/12/24, at 1 ¶ 4 (unnumbered).  At no point did Appellant state in her post-sentence motion that the court failed to take into account the specific, mitigating factors she raises herein.  Therefore, she has waived this argument for our review.  **See Griffin**, 65 A.3d at 936 ("[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings.  Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citation omitted).

We also note that Appellant did not specifically set forth her contention that the court failed to consider the above-stated factors in her Rule 1925(b) statement.  Therein, she set forth the following claim:

> The trial court abuse[d] its discretion in sentencing … Appellant to a clearly unreasonable, unduly harsh and manifestly excessive sentence without adequately considering the following: (1) the nature and circumstances of the offense; (2) … Appellant's history and characteristics; (3) any pre-sentence investigation report; and (4) the sentencing guidelines[.]

Rule 1925(b) Statement, 6/30/25, at 1 (single page; unnecessary capitalization omitted).  Again, Appellant did not mention the specific mitigating considerations that she herein contends that the court failed to take into account when fashioning her term of incarceration.  Thus, the trial court did not address, in its Rule 1925(a) opinion, Appellant's claim that it failed to take into account her age, lack of criminal history, PTSD, minor role in the offense, acceptance of responsibility and remorse, and her enrollment in a

- 6 -

rehabilitation program. Accordingly, we deem Appellant's sentencing argument waived on this basis, as well. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Pa.R.A.P 1925(b) Order, 7/2/25, at 1 (unnumbered) (warning that "[a]ny issue not properly included in a timely filed and served 1925(b) Statement shall be deemed waived") (citations, emphasis, and quotation marks omitted); ***see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (citations omitted; some brackets added).[3]

In any event, even if not waived, our Supreme Court has also held that "[a]n allegation that the sentencing court failed to consider certain mitigating factors generally does not … raise a substantial question." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. 2010) (citation omitted). Moreover, the ***Moury*** Court declared that "[w]here the sentencing court had the benefit of a presentence investigation report (PSI), we can assume the sentencing court was aware of relevant information regarding the defendant's character and

_____

[3] We recognize that according to the docket, Appellant filed her concise statement several days before the court filed its order directing her to do so, in which it issued the waiver warning. However, Appellant did not thereafter seek to file an amended Rule 1925(b) statement setting forth the specific argument she now raises on appeal; thus, the waiver rule applies.

weighed those considerations along with mitigating statutory factors." ***Id.*** (citations and internal quotation marks omitted).

Here, the sentencing court had the benefit of a PSI, as well as a probation and parole intervention (PPI) evaluation, and sentencing memoranda from both the Commonwealth and defense. ***See*** N.T. Sentencing, 12/4/24, at 4. Additionally, the Commonwealth admitted the record of Mr. Redcay's sentencing proceeding, as well as victim impact statements. ***Id.*** at 3, 7. The Commonwealth also reiterated that, as part of Appellant's plea, it had "agreed that any incarceration sentence in this case would be capped at the maximum county sentence, which is 11½ to 23 months." ***Id.*** at 5. The court stated that it had also reviewed several letters written on Appellant's behalf. ***Id.*** at 8.

Aside from those letters, and the sentencing memorandum, defense counsel stated he had no further evidence to introduce. ***Id.*** Appellant then exercised her right to allocution, apologizing "for everything that happened[,]" and saying that she was just "listening to [her] ex-husband who asked [her] to go help," but claiming that "everything got out of control…." ***Id.*** at 9. Defense counsel also argued that Appellant had been influenced by her ex-husband (the victim's son) to commit these crimes, and that Appellant "has a diagnosis of PTSD … that comes from the abusive relationship that she had with [him] starting back 40[] years ago." ***Id.*** at 9-10. Counsel repeatedly claimed that Appellant "did this because [her ex-husband] asked her to…." ***Id.*** at 10; *id.* at 12 ("Again, she did it at the request of her ex-husband….").

Counsel additionally noted that Mr. Redcay's "name was on a lot of [the] accounts" from which money was stolen, indicating that he played a bigger role in the crimes than Appellant. *Id.* at 11.

Moreover, defense counsel told the court that Appellant had recently gotten into the Critical Time Intervention (CTI) program, which was "a nine-month limited program that works to engage people to … get their own housing, connect them to the community, connect them to services and help them get a job…." *Id.* at 13. Counsel also told the court that Appellant was 57 years old, that she had a prior record score of zero, and that "[t]his is the first conviction that she has [had] in her whole life." *Id.* at 14. Counsel argued that Appellant took responsibility by pleading guilty, that she was "not a threat to the community at large[,]" and that her rehabilitative needs would be much better met by a "time-served sentence with a long period of probation so that she can work with CTI…." *Id.* at 15, 17. Thus, counsel asked for a sentence of time-served to 23 months, with "a long period of probation…." *Id.* at 17.

In countering defense counsel's argument, the Commonwealth began by stressing that Appellant had taken "an elderly woman who was incapacitated with dementia" from her home and kept her away from her family for months without proper care and medical treatment, while Appellant and Mr. Redcay "were exploiting her financially." *Id.* The Commonwealth additionally focused on the fact that Appellant did not fully accept responsibility, noting that in the PSI, she had made comments indicating she

was placing blame on Mr. Redcay, other family members, and even the police. *Id.* at 19-20. The Commonwealth also argued that Appellant "downplay[ed her] substance use disorder[,]" claiming that she had failed to adequately report, during the PSI and PPI evaluations, her methamphetamine, cocaine, and benzodiazepine use. *Id.* at 21-22. The Commonwealth further argued that Appellant had "received a benefit for the level of acceptance of responsibility" that she had exhibited, which was the Commonwealth's offering her a guilty plea to limited charges and a sentence capped at the maximum county term. *Id.* at 22. The Commonwealth concluded that, "given the level of exploitation that was involved in this case against an elderly woman who had dementia and could[ not] care for herself, … the appropriate sentence is the maximum county sentence." *Id.*

The court then provided a statement prior to imposing Appellant's sentence. It first noted that it had "considered all of the information that [it] had at [its] disposal, [including] the PSI, the PPI, [and] the Commonwealth and the defense memorand[a]…." *Id.* at 23. The court properly acknowledged that the three main considerations of sentencing "are the rehabilitati[ve] needs of the defendant, the protection of the community[,] and the seriousness of the offense…." *Id.* It then stated:

> THE COURT: I think the seriousness of this crime cannot be depreciated. This was a serious crime, a very serious crime. I think [Appellant] got credit for taking … responsibility, at least to the extent of pleading guilty, by the agreement that was negotiated.

I do think [Appellant] clearly discounted or ignored, frankly, her substance-use disorder[, a]s clearly [Appellant] is a victim of substance-use disorder and clearly this PPI is to some extent worthless without that component being considered[,] evaluated[,] and treated.

\*\*\*

[W]hat happened here was horrendous. There's just no other way to put it.

This woman who had dementia was spirited away, kept from her family. Her family was devastated, didn't know where she was. While [Appellant and Mr. Redcay] did that…, they stole hundreds of thousands of dollars.

\*\*\*

[Appellant] stole tens of thousands of dollars from this woman that I suspect will never, ever, ever be repaid.

Knowing these defendants as I know them[,] while I can order it, the chances of them actually paying [the victim] back are actually slim to none. That's just the reality of the situation.

I guess[,] to some extent[,] reading the letters from all these people that were submitted to me on behalf of [Appellant by] her children, [and] her siblings[,] … it appears to me that for a significant amount of time she has struggled with substance-use disorder, she's been homeless and none of these people came to her aid[], at least that I know of, and I'm not faulting them because I understand the nature of substance-use disorder and the people who suffer from it[,] and I understand the nature of mental illness and [Appellant] has both and I understand the devastation that those afflictions have on the family and … on kids, on siblings.

So what I take out of all this is that these loving people who all seem to be respectful [and] doing very well…, people who are successful in their own lives, what I take out of all this is that I suspect, I don't know, but it's a pretty good assumption[,] that all this time while was she suffered with these afflictions, she refused to get help or help herself or [allow] other people [to] help[] her.

I quite agree with the Commonwealth that [Appellant], you point to everybody else and you don't really point to yourself at all. You don't recognize that you … had a hand to play in what happened.

> You talk about how you were influenced by your ex-husband, [and] by Mr. Redcay, but you don't seem to quite comprehend that you had a hand in this.
>
> I do think this case calls for an aggravated sentence, which is the cap that was agreed to in this case, and I think that's so because of all the reasons that the Commonwealth put on the record that I've adopted[,] and for all the reasons that I placed on the record.

*Id.* at 23-26. The court then sentenced Appellant to an aggregate term of 11½ to 23 months' incarceration, followed by 5 years' probation. *Id.* at 26-27.

Given this record, we would discern no abuse of discretion in the trial court's decision, even had Appellant preserved her sentencing challenge for our review. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) ("Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion."). It is apparent that the court considered the mitigating factors cited by Appellant, but it ultimately found that those factors were outweighed by the aggravating circumstances in this case, such as the seriousness of Appellant's offenses, her downplaying her substance abuse issues, and her failing to take full responsibility for her role in the offenses. This Court has made clear that "the weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's exclusive domain." *Commonwealth v. Baker*, 311 A.3d 12, 19 (Pa. Super. 2024) (citing *Commonwealth v. Chilquist*, 548 A.2d 272, 274 (Pa. Super.

1988)). Therefore, even if Appellant had preserved her sentencing claim for our review, we would conclude that no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2026